GAINES v. McKINLEY.

1. A letter of attorney to an agent, authorizing him to sell and make a good title to a slave, warranting him to be a slave for life, "and to do and perform all, and every other matter or thing that may be necessary touching the premises," does not prohibit the agent from making a warranty of soundness to the purchaser.
2. An agent employed to sell a slave may warrant him to be *sound*, unless inhibited by the terms of the authority under which he acts.

THE plaintiff in error declared against the defendant, in the Circuit Court of Lauderdale, for the breach of a warranty of soundness contained in a bill of sale, by which the agent of the defendant, in consideration of five hundred and twenty-five dollars, transferred the right to a negro boy named Jackson, to the plaintiff. The case was tried on the plea of *non assumpsit*, with an agreement that the same defence might be made, as if it were a special plea, denying the authority to execute the bill of sale, and verified by affidavit.

On the trial, a bill of exceptions was sealed; in which (among other things) it appears, that the plaintiff offered in evidence, the bill of sale referred to, in his declaration, together with the power of attorney, under which it was executed: which are in these words, viz: " Received of W. B. P. Gaines, the sum of one thousand and fifty dollars, the sum for the purchase of two negro men; that is to say, the sum of five hundred and twenty-five

Gaines v. McKinley.

dollars, for the purchase of John, about twenty-seven years of age; and five hundred and twenty-five dollars, for the purchase of a negro man Jackson, about seventeen years of age. The above described and above named negroes, I warrant and forever defend, unto the said W. B. P. Gaines, the same to be slaves for life, and I further warrant the same to be sound in body and mind, and slaves for life. October 11th, 1833.

For JOHN McKINLEY,<br>
C. COCKBURN.

Attest: Eli Friend."

" I hereby authorize C. Cockburn to sell a negro man of mine named John, about twenty-eight years of age, and a negro boy named Jackson, about sixteen or seventeen years of age, and to make good titles to the purchaser or purchasers, warranting them to be slaves for life, and to do and perform all and every other matter or thing that may be necessary touching the premises; hereby promising to ratify and confirm whatever he may do, in virtue of the power conferred by this instrument. In testimony whereof, I have hereunto set my hand and affixed my seal, this 5th day of October, 1833. J. McKINLEY, [SEAL.]"

The defendant by his counsel, objected to the bill of sale being read to the jury, on the ground that the power did not confer an authority to warrant the slaves sold, to be sound in body and mind; which objection was sustained; and the plaintiff thereupon excepted.

Erwin, for the plaintiff.
McClung, for the defendant.

COLLIER, C. J.—The question necessary to be considered is, did the power of attorney from the defendant to Cockburn, confer an authority to warrant the soundness of the slaves to the purchaser?

In Skinner v. Gunn, (9 Porter's Rep. 305,) this court say "an authority to do an act, must include power to do every thing usual and necessary to its accomplishment. Thus, an agent employed to get a bill discounted, may endorse it in the name of

his employer, and bind him by such endorsement. So, an agent employed to sell a horse, may warrant him to be sound, that being usually done in such cases. But in either of the cases here put, the power of the agent might have been restrained, by a prohibition to do the particular act." So Mr. Justice Story says, that an agent entrusted to sell a horse, is clothed by implication, with power (unless expressly forbidden) to make a warranty on the sale. (Story's Agency, 59, 97, 122.) No objection is made to the correctness of the rule as here stated; but it is argued for the defendant, that this case comes within the exception, and that the grant of power to sell the slaves with an express authority "to make good titles to the purchaser or purchasers, warranting them to be slaves for life," impliedly inhibited the agent from making a warranty of soundness, upon the maxim *expressio unius exclusio est alterius.*

Upon a sale of personal chattels, the seller impliedly stipulates with the purchaser, that the article sold is his own, and that he will indemnify him for the loss, if the title is in another person: (Ricks v. Dillahunty, 8 Porter's Rep. 134.) The direction then, in the power of attorney, as to warranting the negroes to be slaves for life, conferred no additional authority upon the agent, as the silent operation of law would by the mere act of sale, have obliged the defendant to make good a defect in the title. And as the *legal effect* of the power is a mere authority to sell not enlarged by the terms noticed, it is clear that the maxim relied on, will not lend its influence. To make it applicable, and thus exclude the warranty of soundness, as an unwarrantable tension of the power granted, it should appear that the manner in which the sale was to be consummated, so far as it related to the warranty, was expressly pointed out, or that the power to warrant, went beyond what the law would imply from the sale itself.

This view being decisive of the case upon its merits, we decline considering the other questions raised upon the bill of exceptions. The judgment is reversed, and the case remanded.