PRINTUP BROTHERS & COMPANY *vs.* TURNER.

TURNER *vs.* PRINTUP BROTHERS & COMPANY *et al.*

1. Where a deed to lands is made to partners in the firm name, they nevertheless hold as tenants in common, and if, in the partnership name, they make a promissory note with mortgage on the land, and in the body thereof use the firm name, but execute it in their individual capacity, it is a proper legal conveyance from the partnership, as also from the partners themselves to the mortagee, and it may be foreclosed against one, more, or all of the partners.

2. One member of the firm cannot convey, by deed or mortgage, partnership land, though in the partnership name and to secure a partship debt, contracted within the scope of the partnership business, without authority or subsequent ratification by his copartners. Such an instrument conveys only his own interest, and though executed in the name of the partnership, if it be a mortgage, may be foreclosed as to the interest of the person who makes it.

3. When a suit is brought against copartners, or the survivors of a partnership, it is not necessary to declare against or pray process as to all the members thereof, and have a return of *non est inventus* as to those not served, in order to bind their interest in the partnership effects ; in either case, the judgment binds the partners sued and served as to their individual property and all the property of the partnership.

Partnership. Title. Deeds. Mortgage. Before Judge UNDERWOOD. Floyd Superior Court. September Term, 1879.

This case arose upon a money rule against the sheriff for the distribution of the proceeds of certain property sold under execution. The facts were, in brief, as follows:

On May 22d, 1869, lot 118, in the Coosa division of the city of Rome, was conveyed to John Bones, John Brown, James W. Bones and John S. Bones, individually. On September 4th, 1872, lot 119 was conveyed to J. & S Bones & Co., as a firm. On April 1st, 1874, "James W. Bones, John S. Bones, John Brown and John B. Dougherty, merchants and partners composing the firm of J. & S. Bones & Co.," executed to Turner a mortgage to secure the payment of a promissory note for $17,500.00, due at twelve months, bearing interest at twelve per cent. per annum. · The mortgage was signed by each partner individually, and the note by J. & S. Bones & Co. At the March term, 1879, of Floyd superior court, a rule absolute was obtained on the mortgage in favor of Turner against James W. Bones, John Brown and John B. Dougherty. At the same term, Printup Brothers & Co. and other creditors obtained judgments against the firms of J. & S. Bones & Co. and Bones, Brown & Co., and against James W. Bones and John Brown, as survivors of both firms.

John Bones, one of the joint owners of lot 118, was no party to any of the debts nor to any of the suits. John S. Bones was a party to all of the debts, but having died, was not a party to any of the suits.

The declaration of Printup Brothers & Co. was against "James W. Bones, John M. Bowie and John Brown, as survivors of J. & S. Bones & Co. (John S. Bones, of said firm, being now deceased), as makers, and of said county of Floyd, and James W. Bones, of said county of Floyd, and John Brown and John B. Dougherty, of the county of Richmond, state of Georgia, survivors of the firm using

the name and style of Bones, Brown & Co., of said county of Richmond (John S. Bones, of said firm, being now deceased), as indorsers." The process was headed by substantially the same statement of parties, and required the defendants to be and appear, etc. The verdict and judgment were against the defendants, as sued, for $4,485.31 principal, $128.00 interest to date, $300.00 damages, and costs.

Lots 118 and 119 were sold under the execution of Printup Brothers & Co., notice being given that the mortgage lien would look to the proceeds, thus presenting an unincumbered title. The former brought $3,100.00 and the latter $2,100.00.

The court distributed the fund as follows:

| | |
|---|---:|
| Costs on execution of Printup Brothers & Co., . . . . . $ | 32 85 |
| Sheriff's commission and making deed, . . . . . . . . | 68 50 |
| To mortgage *fi. fa.* of Seth Turner, . . . . . . . . . | 3,067 77 |
| To *fi. fa.* in favor of Printup Brothers & Co., . . . . . | 943 56 |
| First National Bank of Rome, . . . . . . . . . . . | 677 20 |
| To *fi. fa.* in favor of Rounsavile & Brother, . . . . . | 211 17 |
| To *fi. fa.* in favor of E. J. Stevens, . . . . . . . . . | 198 95 |
| Making in all the sum of . . . . . . . . . . . . . $5,200 00 | |

To this judgment Printup Brothers & Co. excepted, and say the court erred as follows:

1. In ordering and deciding that one-half of the three thousand and twenty-four dollars and ninety cents (being the proceeds or money raised from the sale of lot No. 118) should be applied to and paid on the mortgage *fi. fa.* of Seth Turner, or that any portion thereof should be paid on said mortgage *fi. fa.*

2. In ordering and deciding that three-fourths of two thousand and seventy-three dollars and seventy-five cents (being the proceeds or money raised from the sale of lot No. 119) should be applied to and paid on the mortgage *fi. fa.* of Seth Turner, or that any portion thereof should be paid on said *fi. fa.*

3. In holding and deciding that three thousand sixty-

seven dollars and seventy-seven cents, the proceeds of the sale of said lots Nos. 118 and 119, should be applied to and paid on the mortgage *fi. fa.* of said Seth Turner, or that any portion thereof should be paid on the same.

4. In not holding and deciding that the proceeds and money arising from the sale of said lots Nos. 118 and 119 should be applied to and paid on the judgment and *fi. fa.* of Printup Brothers & Co., and especially in not holding and deciding that the money arising from the sale of lot No. 119 (sold as the property of J. & S. Bones & Co.), should be applied to and paid on the judgment and *fi. fa.* of Printup Brothers & Co., and other common law *fi. fas.* of equal priority or same date against said defendants.

5. In deciding and holding that the mortgage held by Seth Turner had been legally foreclosed, and' that said mortgage *fi. fa.* had been duly and legally issued thereon, and in deciding that the said mortgage *fi. fa.* was a lien on said money in court arising from the sale of said lots or any part thereof.

Turner also excepted, and says the court erred as follows :

1. In awarding any part of the proceeds of the sale of city lots Nos. 118 and 119 to the payment of the costs of the *fi. fa.* in favor of Printup Brothers & Co., except so much as was necessary to pay for the levy and advertisement; when there was money enough in the sheriff's hands arising from other sales' under the same *fi. fa.* to pay all the costs due on the same, not otherwise disposed of.

2. In not according to the mortgage *fi. fa.* in favor of Seth Turner the entire proceeds of the sale of said two city lots Nos. 118 and 119, in the Coosa division of the city of Rome.

3. In awarding any part of said proceeds to the *fi. fas.* in favor of the other claimants.

D. S. PRINTUP; DABNEY & FOUCHE; HALSTED SMITH, for Printup Brothers & Co. *et al.*

ALEXANDER & WRIGHT; J. BRANHAM, for Turner.

CRAWFORD, Justice.

The above two cases involving the same subject matter, and arising out of the same decision of the court below, were argued together and will be disposed of as one case.

The litigation arose over the distribution of a fund brought into court by the sheriff, under a sale made by virtue of certain *fi. fas.* in favor of Printup Brothers & Co. *et al. vs.* J. & S. Bones & Co. *et al.*, upon the following statement of facts, as we gather them from a very voluminous record:

City lot No. 118 in Rome, Georgia, was conveyed to John Bones, John Brown, James W. Bones and John S. Bones, May 22d, 1869. City lot No. 119, also in Rome, was conveyed to J. & S. Bones & Co., as a firm, September 4th, 1872, composed of James W. Bones, John S. Bones, John Brown and John B. Dougherty, who, as merchants and partners constituting the said firm, made to Seth Turner their promissory note for $17,500.00, and to secure the payment thereof, also executed to him a mortgage deed to the said lots 118 and 119 in the said city of Rome. This mortgage conveyed to Turner the whole of No. 119 and three fourths of 118, as John Bones, who owned one-fourth interest in 118, was not a member of the firm of J. & S. Bones & Co., nor a party to the contract.

On the 19th of April, 1879, a rule *nisi* on the petition of Turner was granted, setting forth that James W. Bones, John S. Bones, then deceased, John Brown and John B. Dougherty, merchants and partners, using the firm name and style of J. & S. Bones & Co., had made and delivered to him the said note and mortgage, which rule was served personally upon Brown and Dougherty, and service acknowledged by J. W. Bones for himself and as member of the firms of J. & S. Bones & Co. and Bones, Brown & Co., upon which a rule absolute was granted at the March

term, 1879, of Floyd superior court, as against James W. Bones, John Brown and John B. Dougherty.

At the same term of the court Printup Brothers & Co. obtained common law judgments against the said firm of J. & S. Bones & Co., as makers of certain promissory notes, by serving J. W. Bones and John Brown, and against Bones, Brown & Co., as indorsers, by service upon the same partners. It was alleged in the declaration that John S. Bones was dead, who was a member of both firms, and that the others and John M. Bowie were the survivors, and against whom as such, and against the said firms respectively, judgments were rendered.

The sheriff levied the *fi. fas.* of Printup Brothers & Co. upon the lots 118 and 119, and it was agreed by Turner, the mortgagee, that he sell the title of J. W. Bones, John Brown and John B. Dougherty, unincumbered by the mortgage upon their interests therein. Lot No. 118 sold for $3,100.00 and 119 for $2,100.00. The mortgage *fi. fa.* and the *fi. fas.* of Printup Brothers & Co., with others, contest with each other the distribution of this fund.

To ascertain the lien which each *fi. fa.* has thereto, it is necessary to know exactly what the judgments bound, and what interests the defendants in *fi. fa.* had in the property sold.

The mortgage of Seth Turner having been foreclosed as against James W. Bones, John Brown and John B. Dougherty, it covered one-half interest in lot 118, that being the interest of James W. Bones and John Brown; and it covered three-fourths interest in lot 119, as James W. Bones, John Brown and John B. Dougherty each owned one-fourth interest therein.

The *fi. fas.* of Printup Brothers & Co. covered exactly this same property and the partnership interest of John S. Bones, deceased, in lot 119, but were all younger than the mortgage to Turner, whilst they and the judgment of foreclosure were obtained at the same term of the court. When the property thus levied on came to sale

under the agreement, the whole interest of James W. Bones and John Brown was sold in lot 118, which was just one-half thereof, the other half belonging equally to John Bones, who was not a party to any of the contracts or suits, and John S. Bones, who owned one-fourth individually and not in partnership. Of lot 119, the whole interest of James W. Bones, John Brown and John B. Dougherty was sold, which was three-fourths thereof, and as John S. Bones had a partnership interest in the other and remaining fourth, and was a member of the firms against which Printup Brothers & Co. had judgments, they fastened on his equity of redemption in that fourth, and it too was sold.

It is to be remembered that John B. Dougherty had no interest whatever in lot No. 118, and that John S. Bones, owning one-fourth of the same lot in his individual name, and not having been in life, nor having any representative served, his individual property was not bound and could not be sold under the common law or Printup Brothers & Co. *fi. fas.*

We think, therefore, that the mortgage *fi. fa.* was entitled to all the money subject to distribution from the sale of lot 118, and to all which lot 119 sold for, except such amount as John S. Bones' equity of redemption may have brought at said sale, if, indeed, it brought anything, as the mortgage still rests upon it, and all the property sold did not pay one-third of the amount due thereon.

We lay down the following legal principles as applicable to the points made in this case:

1. Where a deed to land is made to partners in the firm name they nevertheless hold the same as tenants in common, and if in the firm name they make a promissory note with mortgage on the land, and in the body thereof use the firm name, but execute it in their individual names, it is a proper legal conveyance from the partnership as also from the partners themselves to the mortgagee, and it

may be foreclosed against one, more, or all of the said partners.

2. One member of the firm cannot convey by deed or mortgage partnership land, though in the partnership name and to secure a partnership debt contracted within the scope of the partnership business, without previous authority, or subsequent ratification by his copartners. Such an instrument only conveys his own interest; and though executed in the name of the partnership if it be a mortgage, may be foreclosed as to the interest of the person who makes it. 1 Brock. 456; 1 Metcalf, 518; 15 John., 159; 3 McL., 27; Coll. on Part., 394; 61 *Ga.*, 676.

3. When a suit is brought against copartners or against the survivors of a partnership, it is not necessary to declare against and pray process as to all the members thereof, and have a return of *non est inventus* as to those not served, in order to bind their interest in the partnership effects; in either case, the judgment binds the partners sued and served as to their individual property and all the property of the partnership.

Inasmuch, therefore, as there is no evidence in this record going to show that the equity of redemption of John S. Bones in lot No. 119 was sold for any given sum, and that the proceeds of the sale will pay less than one-third of the amount due on the mortgage of Seth Turner, it is ordered that the judgment of the court be reversed, as to the distribution of the fund, and that the same be paid over on the mortgage *fi. fa.*, less the costs of the levy and advertisement under the *fi. fas.* of Printup Brothers & Co., and the expenses of the sale of said property.

Judgment reversed.