[No. 15821.   Department One.—May 25, 1895.]

JAMES O'HARA, APPELLANT, v. P. O'BRIEN ET AL., RESPONDENTS.

BOUNDARIES—MONUMENTS—COURSES AND DISTANCES.—Where no monuments, natural or artificial, called for by description, or by the field notes of a survey, are to be found, the courses and distances called for must control.

ID.—ERRONEOUS SURVEY OF SECTION LINE.—Where the original survey of a section shows that the section and quarter sections were full, and only the monuments fixing the eastern line of the section are found, it is error for a county surveyor, instead of starting from the northeast and southeast corners of the section, and surveying the section and quarter sections by courses and distances, so as to make them full, to attempt to start from a corner in another township, and assuming that certain fences had been located on section and quarter section lines, to survey so as to reduce the length of the south boundary line of the section to less than the eighty chains provided for in the original survey.

ID.—ADVERSE POSSESSION—PRESCRIPTIVE TITLE—INSUFFICIENT PROOF.—
There is no proof of adverse possession sufficient to justify a verdict of
title by prescription where it appears that the controversy related sim-
ply to the location of the division line between the northeast and north-
west quarter of the section, and the defendants had never claimed title
to any land in the northeast quarter, and had never inclosed the land in
question; nor built a fence upon the line claimed by them within five
years next before the commencement of the action, and had paid no
taxes on any part of the land in question.

ID.—AGREED LINE—AGENCY—ABSENCE OF AUTHORITY.—An agent who has
no authority to agree upon a division line, but was merely employed for
the purpose of superintending the lands of the owner and leasing the
same, does not bind the owner by staking a line and causing a furrow
to be ploughed to indicate how far west the tenants should plough, nor
does he thereby authorize the owner of the adjoining land to build a
fence upon the line staked by such agent; and where the evidence does
not show any acts or representations of the agent by which his princi-
pal should be estopped, or any agreement between the agent and the
owners of the adjoining land as to the location of the division line, the
evidence fails to show an agreed division line.

APPEAL from an order of the Superior Court of Con-
tra Costa County.

The facts are stated in the opinion.

*Rhodes & Barston,* for Appellant.

*John B. Mhoon,* for Respondents.

VANCLIEF, C.—Action to recover possession of the
northeast quarter of section number 1 of township num-
ber 1 north, range 2 east, Mt. Diablo base and meridian,
situate in Contra Costa county.

The complaint being in the ordinary form and unver-
ified, the answer denies generally each and every allega-
tion thereof; and then specially alleges adverse possession
of the demanded premises by the defendants during a
period of more than five years before the commence-
ment of the action, and that the action is barred by the
statute of limitations.

The cause was tried by a jury, which returned a
general verdict in favor of defendants, whereupon judg-
ment was rendered accordingly; and plaintiff brings this

appeal from an order denying his motion for a new trial, made upon a statement of the case.

Upon the trial it clearly appeared, and was admitted by both parties, that the plaintiff owned and was entitled to the possession of said northeast quarter, and that defendant owned the northwest quarter of said section, according to the survey and subdivision thereof by the government of the United States; and, consequently, that the controversy related solely to the location of the line between the northeast quarter and the northwest quarter of said section, and involved the question of title to only a strip of land running north and south across the north half of the section containing about seven and a half acres which lies wholly within the northeast quarter, if that quarter, according to government survey, is forty chains square; or even if the north and south boundary lines thereof extend forty chains west from the east boundary of the section; and there is no dispute as to the true location of the east boundary line of the section.

The plaintiff employed E. C. Brown, county surveyor of Contra Costa county, to determine the true location, according to government survey, of the dividing line between the northeast and northwest quarters of the section, who testified as a witness for plaintiff that he had procured from the United States land-office a copy of the original field notes of United States Deputy Surveyor L. Ransom, who had surveyed township number 1 north in 1851, and also a copy of the field notes of E. H. Dyer, who, as United States deputy surveyor, had subdivided said township into sections and quarter sections in 1861; that by those field notes he found and identified the northeast and southeast corners of section 1 of said township by means of witness trees, etc., called for in said field notes; but could find none of the monuments, witness trees, or other landmarks referred to in those field notes by which to locate or identify the northwest or southwest corners of that section, or any of the interior corners of the quarter sections

thereof. Nor was he able to find any of the monu-
ments, witness trees, or landmarks called for in the
field notes of the government surveys of sections 2,
3, or 4 of said township by which to identify any cor-
ner of the last-named sections, or of any quarter sec-
tion thereof. But it clearly appears that, by starting at
either the northeast or southeast corner of section 1,
both of which were identified and fixed, and following
the courses and distances called for in the field notes
of either Ransom or Dyer, he could have located both
the northwest and southwest corners of section 1, and
also all the corners of the quarter sections thereof. He
did not think it proper, however, to adopt this method,
but, for the purpose of finding the northwest corner of
section 1 in township 1, he commenced at the corner
common to four quarter sections in township number
2, which had been subdivided in 1872 by United States
Deputy Surveyor Wackenruder, viz., the northeast and.
southeast quarters of section 34, and the northwest and
southwest quarters of section 35, township number 2.
This common corner he identified by a witness tree
called for by Wackenruder's field notes. Thence he
ran south half a mile to a crossing of fences which he
established as the corner common to sections 34 and 35
of township 2, and which he assumed to be identical
with the corner common to sections 2 and 3 of town-
ship 1. Thence he ran east 40.04 chains to a fence
which the defendant claimed to be his west line; and
thence continued east 40 chains, and accepted this
point as the northwest corner of section 1, township 1.
The result is, that instead of being 80 chains in length,
as called for by the field notes of Ransom and Dyer,
the north line of section 1, township 1, is only 78.78
chains in length. To reach this result the county sur-
veyor started at a point in township 2 established by
Wackenruder, and thence ran a mile and a half by
courses and distances only; connecting the subdivision
survey of township 2 by Wackenruder with that of the
subdivision of township 1 by Dyer, assuming that the

section corners of the two townships on the township line coincided, and that certain fences of the farmers were on the section and quarter section lines; whereas he should have started at the known and established southeast corner of section 1 from which Dyer started; and thence run north 80 chains to the known northeast corner of township 1 which coincides with northeast corner of section 1 of same township. This line is admitted to be the true east boundary of section 1. After reaching the northeast corner of section 1 Dyer's field notes read substantially as follows: "Thence west on true line between sections 1 and 36, 40 chains—set post for quarter section corner, with mound, pits, and trench, as per instructions—80 chains—set post for corner to sections 1, 2, 35, and 36, with mound, pits, and trench. . . . . Thence south on true line between sections 1 and 2, 40 chains—set post for quarter section corner, with mound, pits, and trench—80 chains to corner of sections 1 and 2." Thus showing that section 1 is a full section, each of the four boundary lines thereof being 80 chains in length, and all the angles being right angles.

The county surveyor also located the southwest corner of section 1 at a crossing of fences upon the unwarrantable assumption that those fences and other fences in that vicinity had been located on true section and quarter section lines. The inevitable consequence of this was to reduce the length of the south boundary line of section 1 to 78.26 chains.

Assuming that, by the aforesaid methods, the county surveyor correctly located the northwest and southwest corners of the section, he properly divided it into quarter sections, whereby the disputed strip of land was found to be wholly within the plaintiff's northeast quarter; and, on the other hand, if the methods pursued by the county surveyor were wrong and liable to lead to erroneous conclusions, as I think they were (*Chapman* v. *Polack*, 70 Cal. 487; *Gordon* v. *Booker*, 97 Cal. 586; *Blackburn* v. *Nelson*, 100 Cal. 336), and the

north and south boundary lines of the section extended
from the fixed east corners west 80 chains, as indicated
by Dyer's field notes, the true division line between
the northeast and northwest quarters would be con-
siderably west of the location of it by the county sur-
veyor, and consequently considerably west of the west
line of the strip of land in question; so that in either
case the verdict of the jury, to the effect that the strip
of land in question is not in plaintiff's northeast quarter,
or that plaintiff was not the owner of it, was not justi-
fied by the evidence.   The evidence strongly tends to
prove that the strip is within the northeast quarter, and
there is no substantial conflict of evidence on this point.
(*Gordon* v. *Booker, supra; Wise* v. *Burton,* 73 Cal. 166.)
Rejecting the methods by which the county surveyor
determined the location of the west corners of the section,
still his uncontradicted testimony, in connection with
the field notes of Ransom and Dyer, as to the monu-
ments he found and as to those he failed to find, is suf-
ficient, *prima facie,* to prove that the strip of land in
question lies within the boundaries of the northeast
quarter of section 1, according to the government survey
thereof, and it is admitted that the plaintiff is the owner
of that quarter section as surveyed by the government,
unless he has lost a part of it by adverse possession of
defendants, or by estoppel.   The mode of survey adopted
by the county surveyor is considered here and held to
have been incorrect in response to the objections to it by
respondent's counsel; so that in case of a resurvey for
purposes of a new trial the errors of the county surveyor
may be avoided.   It is possible that, upon such resurvey,
additional monuments called for by the field notes of
Ransom or Dyer may be discovered, and, if so, they
must control the calls for courses and distances; but, if
no additional monuments are discovered, the west cor-
ners of the section and the interior corners and lines
of the quarter sections must be found by means of the
courses and distances called for in the field notes of
Ransom and Dyer, from the established and known

eastern corners, as above indicated; it being well settled
that, where no monuments, natural or artificial, called
for by a description or by the field notes of a survey
can be found, the courses and distances called for must
control. (*Gordon v. Booker, supra.*)

2. Assuming that the strip of land in question lies
wholly within the northeast quarter of section 1, I
think the evidence insufficient to justify a verdict to the
effect that defendants acquired title to any part thereof
by adverse possession.

A patent for the north half of section 1, township 1,
was issued by the United States to the railroad com-
pany May 31, 1870, and the railroad company conveyed
the northwest quarter of that section to defendant
O'Brien on October 18, 1872, described as the northwest
quarter " according to the United States survey," and
as " containing 160 acres." On February 12, 1874, the
railroad company conveyed to Charles McLaughlin all
its rights in and to the northeast quarter of said section;
and on October 11, 1892, all the rights and title of Mc-
Laughlin passed to plaintiff.

In the first place, the evidence shows that the con-
troversy has always related solely to the location of
the division line between the northeast and northwest
quarters of section 1, and that defendants have never
claimed title to any land in the northeast quarter, but
have expressly disclaimed title to any part of that quar-
ter as surveyed by the government. The testimony of
plaintiff to this effect was not disputed, and was cor-
roborated by the conduct of O'Brien during the survey
by Brown. In the second place, the defendants never
inclosed the land in question. They built a fence on
what they claimed to be the division line running
north from the south line of the north half of the sec-
tion to a point about 20 feet south of the north line
of the section. As to when this fence was built the
evidence is indefinite and uncertain, but strongly tends
to prove that it was built within five years next before
the commencement of this action (fols. 143, 171, 180,

203).   In the third place, there is no evidence that defendants ever paid any taxes on any part of the land in question.   The only answer to this point by counsel for respondents is that adverse possession had continued for a period of five years before the amendment of section 325 of the Code of Civil Procedure, in 1878, requiring payment of taxes as a requisite condition to the acquisition of title by adverse possession.   But of this there is no substantial evidence.

3.  It is contended for respondents that the line upon which they built the fence was a conventional division line, agreed upon by McLaughlin and the defendants; and the grounds of this contention are that in 1885 or 1886, while Captain Lamberton was agent for McLaughlin for the purpose of superintending the lands of the latter and leasing the same, he staked the line upon which the defendants afterward built their said fence, and caused a furrow to be ploughed upon that line by McLaughlin's tenants of the northeast quarter of section 1.   But the evidence shows that Lamberton had no authority from his principal to fix or settle boundary lines, and that he never pretended to have such authority; that he staked the line merely for the purpose of showing McLaughlin's tenants how far west they should plow; that he did not consult the defendants in regard to the location of the line, nor represent to them that it was the true division line; that the only means he employed to locate that line was measuring with a tape line from certain lines to which farmers in that vicinity had ploughed; and that he regarded his staking of the line as "guess work."   None of the defendants were present with him while he was staking the line, or ever said any thing to him about the matter.   Surely there was no agreement between Lamberton and defendants as to the location of the division line between the northeast and northwest quarters of section 1, even if Lamberton had authority to make such agreement.   Nor does the evidence show any acts or representations of Lamberton by which McLaughlin or his

vendee should be estopped from denying that the line staked by Lamberton is the true line.

I think the order should be reversed and a new trial granted.

BELCHER, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion the order is reversed and a new trial granted.

GAROUTTE, J., HARRISON, J., VAN FLEET, J.