## GODLEY *et al. v.* HINELY *et al.*

1. A partner can not convey lands in behalf of a partnership so as to divest the individual interest of his copartner; and it naturally follows that he can not, by agreeing to a new line, even to settle a disputed boundary, deprive his copartner of his interest in a large body of land.
2. The testimony as to the agreed line, which was admitted over the objections that the witnesses Washington Kessler and Perry Kessler were interested in the result of the suit, should have been excluded, because the petitioners were the first transferees from the deceased through his administrator. The testimony was likewise objectionable because the witnesses were pecuniarily interested in the result of the case.
3. The illegal admission of the evidence just dealt with requires the grant of a new trial; and the sufficiency of the evidence is not now passed on.

No. 5831. FEBRUARY 27, 1928.

Equitable petition. Before Judge Highsmith. Effingham superior court. December 29, 1926.

*W. C. Little, P. L. Purvis,* and *Oliver & Oliver,* for plaintiffs.

*J. H. Smith, C. T. Guyton,* and *Ulmer & Dowell,* for defendants.

RUSSELL, C. J. Mrs. Carrie Walton Godley, individually and as guardian for named minor children, and Josephine and Robert L.

Appeal and Error, 4 C. J. p. 652, n. 55; p. 1198, n. 19.
Partnership, 30 Cyc. p. 437, n. 67.
Witnesses, 40 Cyc. p. 2279, n. 59; p. 2313, n. 3.

Godley individually brought an equitable petition against E. B. Hinely, alleging that they were the owners of a described tract of land containing about 5,700 acres, known as the Monteith plantation and Drakie plantation, and attaching to the petition an abstract of title showing title in them; and that the defendant had entered upon said land without authority so to do, and had unlawfully cut therefrom approximately 600,000 feet of timber. They prayed for a temporary and permanent injunction, an accounting, and damages for the trespass. The defendant answered and set up that he had in good faith purchased from Washington Kessler, Perry Kessler, and Emerson Graham, by separate conveyances, the timber and trees claimed; and he vouched the three named parties into court as defendants. The Kesslers filed their answer setting up that they had been in the quiet, peaceable, open, and notorious possession of said lands, under duly recorded deeds, for more than forty-five years; which right, title, and possession had been acquiesced in by the owners of the Monteith plantation, including the husband and father of the petitioners. Emerson Graham and Mrs. Emerson Graham filed an answer in which they set up that they and their predecessors in title had been in public and adverse possession, for more than forty years, of all that tract of land bounded (so far as now involved) on the "east by the westermost channel of stream following through Monteith swamp, and which stream formerly separated it from lands of Crabtree, now lands of Godley and others." The defendants' land adjoins that of the petitioners. The real issue in the case is as to the location of the dividing line between the lands of the several parties. The petitioners claimed that the true dividing lines were those as shown in the deeds, thus including in their land all of the property known as the Monteith swamp. Emerson Graham and Mrs. Emerson Graham contended that the true line was the run of the swamp, and based their claim upon an alleged agreement between their predecessors in title, Joe Hinely and Nathan Godley, whereby it was claimed a dispute as to the line was settled by fixing the run of the swamp as the true line. Washington and Perry Kessler contended that the channel of the swamp had been established as the true dividing line by acquiescence therein by the predecessors in title of the petitioners. The jury returned a verdict in favor

of the defendants. The plaintiffs filed a motion for a new trial, which was overruled, and exception was taken.

Though there are twenty-six special grounds in the motion for a new trial, it will not be necessary to deal with all of them in this opinion. Several of the grounds raise the same point of law, although addressed to different features of the case. The first question for decision is whether a partner or cotenant, whichever may be the relationship, can bind his copartner or cotenant in land, so as to affect the interest of the latter, by an agreement with a coterminous-land owner fixing a different line from that called for by the deeds under which the partners hold.

1. It appears that Washington Kessler as a witness was asked the question whether he was present when the line in question was discussed and an agreement was made as to where that line should be between Nathan Godley and Joe Hinely. The plaintiffs objected to the question, on the ground, among others, that any declaration of Nathan Godley would not be binding on the other partner, W. S. Godley, and therefore not binding on the partnership property. The court overruled the objection, and permitted the witness to testify. Later the plaintiffs moved to exclude the testimony upon the same objections. We are of the opinion that the evidence should have been excluded after the question was answered, though preferably the witness should not have been permitted to answer the question. A partner can not convey lands. in behalf of a partnership, so as to divest the individual interest of his copartner; from which it naturally follows that he can not, by agreeing to a new line even to settle a disputed boundary, deprive his copartner of his interest in over 500 acres of land, as would be the result in this case. It was admitted that at the time the alleged declaration was made the property was in the possession of a partnership composed of W. S. and Nathan Godley, and the testimony which the plaintiffs sought to exclude stated a declaration of one partner as to partnership property; and this declaration could not convey partnership property.

One partner can not execute a deed conveying partnership realty, which will be binding on the firm. *Drumright* v. *Philpot,* 16 *Ga.* 424 (60 Am. D. 738); *Sullive* v. *Jones,* 61 *Ga.* 676; *Turner* v. *Printup,* 65 *Ga.* 71. While it is true that an oral agreement fixing a dividing line between adjoining owners, if such line has been in

doubt or dispute, is not regarded as passing title to any real estate, but merely as defining the line between such owners *(Farr* v. *Woolfolk,* 118 *Ga.* 277, 45 S. E. 230; 4 Thompson on Real Property, § .3103 and notes), it would nevertheless seem, where the effect of such an agreement, if enforceable against the partnrship property, would be to authorize one partner to deprive the partnership of several hundred acres of land, that the principle announced in the *Drumright, Sutlive,* and *Turner* cases, supra, would, by analogy at least, render such agreement by one partner ineffectual as against the interest of the other. A partner derives his power to bind the partnership by reason of being a general agent of the firm *(Merchants &c. Bank* v. *Johnston,* 130 *Ga.* 661, 664, 61 S. E. 543, 17 L. R. A. (N. S.) 969, 14 Ann. Cas. 546) ; and it has been held that the location of boundary lines by an agent of the owner will not bind the owner in a subsequent controversy between such owner and the adjoining owner. O'Hare *v,* O'Brien, 107 Cal. 309 (40 Pac. 423). Real estate owned by a partnership is held by the members of the firm as tenants in common. 2 Thompson on Real Property, 969, § 1773, note 27. It has been held that a dedication of a highway to public use can not be made by one cotenant without the consent, express or implied, of all the other part owners. Holcomb *v.* Coryell, 11 N. J. Eq. 548; Scott *v.* State, 1 Sneed (Tenn.), 629. Upon similar principles, in this case, even if the alleged statement of Nathan Godley be sufficient to constitute an agreement settling and fixing a disputed line, we are of the opinion that such declaration was ineffectual to change the status of the partnership property. It is not contended that W. S. Godley, the other partner or cotenant, either authorized or ratified the alleged agreement. On the other hand, the only testimony upon this point is that of W. S. Godley himself, who testified that he had no knowledge of the alleged agreement. See Lagow *v.* Glover, 77 Tex. 448 (14 S. W. 141), where it was held that the agreement or acquiescence of one heir, fixing an uncertain or disputed dividing line, does not bind the other heirs, all the heirs being tenants in common of the property.

2. From the nature of this case the error in the admission of the testimony above set forth and similar evidence requires the grant of a new trial. It is true that the defendants also claimed under a prescriptive title arising from adverse possession for more

than seven years; but even if the defendants introduced sufficient testimony to authorize a finding in their favor upon that ground, the jury had also before it evidence as to the agreed line which was improperly admitted, and it is impossible for a court to determine upon which ground the verdict of the jury was based. Furthermore, without the aid of the proof as to the established line, the defendants did not make a case which required a finding in their favor. The plaintiffs' deeds established their right to possession of the Crabtree place, which was defined by metes and bounds of record in the surveyor's book of plats of Effingham County. The defendants' muniments of title each called for lines adjoining the Crabtree place; and so in this case the defendants' right of possession depended almost, if not entirely, upon the proof of the agreed line. The plaintiffs and the defendants, as were the predecessors in title of each, are coterminous-land owners; and quite a different rule applies as to obtaining prescriptive title by adverse possession in the case of adjoining-land owners from that applied in other instances. Ordinarily possession and use of land along the boundary line of adjoining owners is construed to be permissive; so much so that this court has held that something must be done to indicate a right of possession on the part of one neighbor, adverse to the claim of his fellow. Mere cutting of timber or even cultivation along the line, although beyond the boundary of the coterminous proprietor, has been held by this court not to evidence adverse possession. *Durham* v. *Holeman,* 30 *Ga.* 619, 625; *Carroll* v. *Gillion,* 33 *Ga.* 539, 547. In the case at bar the plaintiffs' lands, including the Crabtree place, aggregate nearly 6,000 acres. The deeds of all three of the defendants combined call for less than 250 acres. The fact that some or even a large number of trees were cut in the large body of swamp which this record discloses is included in the tract of land owned by the plaintiffs, and that one year about eight acres of hammock land on an island in the swamp was cultivated, would not, in our opinion, be sufficient to show adverse possession. Right of possession of a part of a tract of land, as a general rule, extends to the boundaries of the land as described in the deed. Certainly that rule could not be fairly applied in this case. So that after all, so far as appears from the record in this case, the result turns upon the validity of the established line contended for by the defendants.

The testimony as to the alleged agreed line was inadmissible, because the deeds of the defendants show that the lands of each and all of them are bounded by the Crabtree lands; the title deeds of the plaintiffs in evidence show that they claim under deeds showing the line of the Crabtree place, and the description includes the land in question, and therefore the effort on the part of the defendants to show by oral declarations a line different from the line shown in the deed submitted by the plaintiffs, as well as different from the lines shown by the deeds of the defendants, was an attempt to vary by parol testimony the deeds of the plaintiffs, which were obtained subsequently to the alleged oral agreement. Certainly the evidence does not support the claim of adverse possession, because the only boundary of the defendants' land which is material to this investigation is the one adjoining the land claimed by the plaintiffs, whatever may be the extent of the latter; and nothing is better settled than that prescriptive title to land arising from adverse possession extends no further than the boundaries set forth in the color of title upon which the claimant bases his prescriptive possession. In no event are the defendants entitled to recover, upon proof of adverse possession based upon their deeds, any land which is included within the Crabtree place, unless such land is also included within the defendants' muniments of title. Since the defendants accepted papers which fix the boundaries of the Crabtree place as the correct lines of their purchases, the exact line between the parties must be determined by ascertaining what was the limit and extent of the Crabtree place. So far as the written evidence of title is concerned, there is no dispute upon this point; for the boundaries of the Crabtree place are specifically delimited, surveyed, platted, and have for years been recorded in the records of the county surveyor of Effingham County. The record does not disclose evidence of adverse possession so as to give rise to a dispute, because the predecessors of all of the defendants at the time of the alleged agreement had no foundation upon which to base a dispute. The deeds the defendants' predecessors at that time held fixed the ultima thule of any claims they could make by the lines of the Crabtree place. For that reason it could not be a bona fide dispute. Any claims antagonistic to the rights of the Godleys, interposed by the predecessors of the defendants at that time, were obliged to have been wholly mere-

tricious,—an attempt to get something for nothing, in order to force Godley to buy his piece of land. Where there is no reasonable ground for dispute as to the location of lines, oral testimony is not admissible for the purpose of showing lines different from those set forth in a deed.

The plaintiffs hold under an administratrix's deed. The administratrix stands in the shoes of the deceased. The deed made by the administratrix is the same, in legal effect, as if the deed had been executed by the deceased himself. The grantees in this deed are the first transferees or assignees from the deceased; and therefore the rule that where any suit is instituted or defended by an "assignee, transferee, or by the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor as to transactions or communications with such . . deceased person, whether such transactions or communications were had by such . . deceased person with the party testifying or with any other person," is applicable in this case. All of the defendants in this case have a common interest, although they hold from different grantors. If the agreed line said to have been fixed between Hinely and Godley be established as the true line, the beneficial effect of acquiring a considerable additional body of land will affect the Kesslers as it does Mrs. Graham, the only difference being that Mrs. Graham will receive a smaller tract of land than the Kesslers. If the channel of the swamp instead of the original lines of the Crabtree place can be established as the true line, all will alike prevail against the plaintiffs, though not to the same extent. Mrs. Godley was not offered to testify to the agreement between her father and Godley; but, by reason of interest, the testimony which the court permitted to be delivered by the Kesslers was subject to the objection offered by the plaintiffs, because, under paragraph 4 of section 5858 of the Civil Code (1910), "Where a person not a party, but a person interested in the result of the suit, is offered as a witness, he shall not be competent to testify, if as a party to the cause he would for any cause be incompetent." The Kesslers were not only interested in the result of the case but were parties. It is perfectly plain that the Kesslers were interested in the result of Mrs. Graham's land being extended to the channel of the swamp, because the evidence plainly shows that the line of the Kesslers would also extend to the chan-

nel of the swamp. The Kesslers, therefore, are very vitally interested in the outcome of Mrs. Graham's defense. If she gains, they gain the lines they claim to own. Even if this is not true, this evidence is apparently inadmissible, because the Kesslers testified that they claimed to the channel of the swamp; and the jury were likely to be misled into believing that, if the channel of the swamp was the line between the Godley lands and Mrs. Graham's land, the same natural landmark and the contour of the land would extend the same boundary to the adjoining land of the Kesslers. If this be not true, then the verdict in favor of the defendants has no evidence whatever in this record to support it, based upon the agreed boundary line, because the evidence upon this subject only purports to show that Godley agreed that Hinely might claim to the run of the swamp, and there is no proof whatever that he ever agreed at any time that the owner of the adjoining lands owned by the Kesslers was to have the benefit of a similar concession. The evidence did not show acquiescence on the part of the Godleys, for the reason that the acts relied upon were not such as to attract his attention to any intention on the part of the claimants to assert possession adverse to his own, and there was no evidence of any declaration by him that he had consented or assented to the possession of the defendants.

Since the rulings made require the grant of a new trial, and it is unlikely that other errors of which complaint is made will recur upon that investigation, and the plaintiffs will at that time have the opportunity of introducing the alleged newly discovered evidence, the remaining assignments of error in the motion for a new trial will not be discussed.

*Judgment reversed. All the Justices concur.*

GILBERT, J., concurs in the result.