No. 41.—WILLIAM DRUMRIGHT and others, plaintiffs in error,. *vs.* DAVID PHILPOT, defendant in error.

[1.] A subscribes the name of a firm, of which he claims to be a member, to a contract of sale; B, the other partner, subsequently ratifies the act, by receiving the purchase-money, &c.: *Held,* that the confirmation or subsequent adoption of B being established, it is competent to give, in evidence, the declarations of A, as to the partnership, made at the time the contract was executed.

[2.] A partner cannot, by virtue of the authority he derives from the relation of co-partnership, bind his co-partner by deed; but a prior authority, or a subsequent ratification, not under seal, either express or implied, verbal or written, is sufficient to establish the deed as the deed of the firm, and binding upon it as such.

[3.] Where there is a complete execution of his authority by an agent, and something more is added, not warranted, the execution is good for that which is authorized, and the excess only is void.

Covenant, in Troup Superior Court. Tried before Judge WARNER, May Term, 1854.

This was an action of covenant, for a breach of warranty, in the sale of three negroes—Becky and her two children, Robert and Ellen—brought by Philpot, against William Drumright, George Nixon and John A. Gough. Drumright, alone, was served, who filed the plea of "*non est factum*" to the bill of sale, the foundation of the action.

On the trial, plaintiff offered in evidence the testimony of John F. Moreland and David A. Philpot, taken by interrogatories. Moreland testified, that "he was a physician—called in May, 1850, by plaintiff, to examine Becky and her two children—thinks Becky, from appearances, had been diseased several years with scrofula—can't be cured—does not know whether the children were unsound when he examined them—had unusual glandular swellings about their throats and necks. —would not like to risk the development of scrofula, as they progress towards mature age".

Philpot testified, "plaintiff purchased the negroes of J. A.. Gough and Daniel Earp, in Heard County, on the 13th May,.

1850. The bill of sale attached ·to the interrogatories, was the one executed·by J. A. Gough to the plaintiff, for the ne-groes, Becky and her two children, and another woman and her child ; the purchase-money for the whole lot ($1250) was all paid but fifty dollars, for which plaintiff gave his due bill ; plaintiff afterwards tendered the negroes back to defendant, and defendant, Drumright, would not receive them, but made some propositions to exchange other negroes for them ; this was before defendant was arrested with a bail writ. After that, witness heard defendant say that he had the money and plaintiff had the negroes, and he would have to feed them ; and that he (the defendant) could make enough on the money to pay expenses".

To the introduction of this testimony, defendant objected. The Court over-ruled the objection, and defendant excepted.

Wm. A. Cock testified by interrogatories, as follows: "in-herited Becky from his father, and owned her for twenty-four years; when he sold her and her children, Ellen and Robert, to Wm. Drumright, who he understood, from both Wm. Drum-right and George Nixon, bought for Drumright and Nixon as partners—received $300 for the children, with the understand-ing that Drumright was to take Becky for nothing—she being diseased with scrofula ; the children were sound and healthy, at that time.

Plaintiff then read in evidence the following admission of defen-dant, made in consequence of Alphonzo Hemphill, a witness sub-pœned by plaintiff, being absent, and by whom plaintiff alleged he could prove the facts admitted, to-wit: "the tender of the negroes and the bill of sale back to defendant, by plaintiff, who alleged unsoundness of the negroes; that Drumright replied that they would not take them back; that he had received the money for them, and could make the expenses out of it, by the time plaintiff could law it out".

Plaintiff then offered to prove by David A. Philpot, that at the time plaintiff purchased the negroes from Gough, that Gough represented himself as one of the firm, in negro trading,

of Drumright, Nixon and Gough.    To which defendant ob-
jected; the Court over-ruled the objection and Counsel for defen-
dant excepted.

Plaintiff then read in evidence the bill of sale : " warranting
the title of said negroes ; and that they were sound and healthy,
in both body and mind," which was signed—

WM. DRUMRIGHT &<br>
GEORGE NIXON.<br>
J. A. GOUGH.

Defendant objected.    The Court over-ruled the objection,
and defendant excepted.

Plaintiff then proved, " that had Becky and her two children
been sound, at the time of sale, they would have been worth
$1000 ; that in their present proven condition, they were worth
$250, or half price".

Defendant introduced no evidence, but requested the Court
to charge the Jury, " that an authority, by deed, is necessary,
in order to bind the principal under seal; also that a partner,
though the articles of partnership were under seal, is not em-
powered to bind his copartners by deed, without an authority of
as high a nature".    Also. " that if the principal acknowledged
that he gave the agent authority to execute a deed, yet, the
acknowledgment, itself, is not sufficient to prove it, without the
production of an authority under seal".

All which requests the Court refused to charge, on the
ground, "that a sale and warranty of the soundness of slaves,
need not be evidenced in writing".

To which decisions and rulings of the Court, defendant ex-
cepted; and on those several exceptions, error is assigned.

JOHN L. STEPHENS, for plaintiff in error.

B. H. HILL, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The defendant in error declared against the plaintiff, in-

the Superior Court of Troup County, for the breach of a warranty of soundness contained in a bill of sale, by which William Drumright & George Nixon, and John A. Gough, in consideration of Twelve Hundred and Fifty Dollars, transferred five negroes—Becky and her two children, Ellen and Robert, and Vina and her infant child, to the plaintiff; the right and title, as well as the soundness of the said slaves, being warranted, under the hands and seals of the parties. The bill of sale was, in fact, executed by Gough alone, in the name of the other two parties—Drumright & Nixon and himself.

William Drumright, alone, was served with process. It was proven, on the trial, that the plaintiff tendered the negroes and bill of sale back to the defendant, and demanded that the purchase-money should be refunded—alleging that three of the negroes, viz: Becky and her two children, were unsound. But Drumright refused to rescind the contract. He admitted that he had received the purchase-money. He made some offer to compromise, by exchanging other negroes, saying, that if he were to sell negroes and take them back, he should never get through with them. This took place before he was arrested. Afterwards, it was in testimony, that he said that he had the money and the plaintiff the negroes, who would have to feed them; and that he, Drumright, could make the expenses of the suit on the money, before plaintiff could law it out of him.

After this proof was introduced, as to the recognition and ratification of the contract of sale, by Drumright, the Court admitted the representations of Gough, as to the partnership in this transaction between Drumright and himself, though objected to by defendant's Counsel.

We see no error in this ruling.

[2.] But the main point in this case remains to be considered. The testimony and the argument having closed, the Court was requested, by defendant's Counsel, to charge the Jury, that an authority, by *deed*, was necessary to bind the principal, under seal; and also, that a partner, although the articles of partnership were under seal, is not empowered to

bind his co-partners by deed, without an authority of as high a nature; and that if the principal acknowledged that he gave the agent authority to execute a deed; yet, that acknowledgment is not sufficient to prove it, without the production of a power under seal. · All of which requests were refused by the Court, on the ground that a sale and warranty of soundness of· slaves, need not be evidenced by deed.

It is not my present purpose to controvert the old rigid doctrine of the Common Law, which asserts that no prior authority or subsequent ratification, either verbal or by writing, without seal, is sufficient to give validity to an instrument, as the deed of the party. I yielded a reluctant assent to this threadbare technicality, in *Ingram vs. Little*, (14 *Ga. R.* 173). In *Texira vs. Evans*, cited in *Master vs. Miller*, (1 *Anstr.* 228.) Lord *Mansfield* repudiated the doctrine, and Chief Justice *Marshall*, in *Anderson vs. Tompkins*, (1 *Brock. C. C. R.* 462,) expressed himself dissatisfied with the extent to which it had been carried. In New York, Pennsylvania and Alabama, the authority of *Texira vs. Evans* is recognized and followed. (*Woolley vs. Constant*, 4 *Johns.* 54, 60. *Ex Parte Kerwin*, 8 *Cowen*, 118. *Stapl. vs. Berger and another*, 10 *S. & R.* 170. *Sigfried vs. Levan*, 6 *Idem*, 308. *Wiley and another vs. Moore and another*, 17 *Id.* 438. *Graham vs. Obyle*, 2 *Penn.* 132. *Boardman vs. Gore & Williams*, 1 *Stewart*, 517.) And from the reported cases, some of the other States, it would seem, begin to take the same view of this principle. (5 *Mass.* 538. 6 *Id.* 519. 8 *Pick.* 326. 3 *Metc.* 103. 2 *Dana*, 142. 4 *Id.* 191. 2 *Ben. Monroe*, 310. 2 *Green*, 583, 585. 4 *McFar.* 239. 1 *H. & M.* 391. 2 *Wash.* 164.) And from some of the later cases, even in England, some relaxation of the rule seems to be indicated, even there. (*Earl of Falmouth vs. Roberts*, 9 *M. & W.* 471. *Davidson vs. Cooper*, 11 *M. & W.* 778, 793.)

Having discharged my duty to the country, by doing what I could in *Lowe vs. Morris and another*, (13 *Ga. R.* 147,) to bring the modern scrawl, misnamed a *seal*, into merited contempt, I shall content myself with what I· have now said, ·to

dismiss this branch of the case—and proceed to inquire, is the the subsequent implied, verbal ratification of Drumright, the partnership, *quoad* this transaction, at least, being established, sufficient to establish this scaled warranty as the deed of the firm, and binding upon it as such?

I would remark, that the whole reasoning on which this doctrine depends, as well as the authorities on which it is founded, are most ably and elaborately reviewed in the cases of *Cady vs. Shepherd*, (11 *Pick. R.* 405, 406,) and *Grover vs. Seton*, (1 *Hall*, 262.) In the latter case, especially, all the English as well as the American authorities, were examined at great length, by Chief Justice Jones; and it is difficult to withhold one's assent to the conclusion at which he arrives. After exposing the utter fallacy of the reason upon which the old rule rests, that one partner cannot bind his co-partner by deed—which principle he does not attempt to disturb—he asks, " can it be that this stern rule of the Common Law, which has its appropriate sphere of action, and a most salutary operation, on these relations of society, where men, not otherwise connected, are the owners of undivided property, is to be applied, in all its force, and to govern with unbending severity in the concerns of co-partners, whose intimate connection and mutual interest require such large power and ample confidence in the integrity and prudence of each other, to give to their operations efficiency, vigor and success?"

He continues—" The pressure of these considerations has induced a relaxation of the Common Law rule, to adapt it to the exigencies of commercial co-partnerships and other associations of individuals, operating with joint funds for the common benefit. The rule, itself, remains, but the restrictions it imposes are qualified by the application of other principles. The general authority of a partner, for example, derived from his relation to his co-partners, does not empower him to seal an instrument for them, so as to make it binding upon them, without their assent and against their will. An absent partner is not bound by a deed executed for him by his co-partner, without his previous authority or permission, *or his subsequent*

*adoption. But the previous authority or permission of one partner to another, to seal for him, or his subsequent adoption of the seal as his own, will impart efficacy to the instrument, as his deed; and that previous authority or subsequent adoption may be by parol"*.

It is difficult to add any thing to this able opinion. The whole of it is worthy of the most attentive perusal.

I would merely suggest, that there is no general principle better settled, both in England and in this country, than that a corporation cannot bind itself, except under its corporate seal. Indeed, this constitutes one of the very elements of the definition of a corporation. And yet, it is now universally admitted, that where the acts done are of daily necessity to the corporation, or must be done immediately—such as issuing, accepting and indorsing bills of exchange, &c, this rule is dispensed with. Would not partnerships fail of accomplishing the end of their formation, if one partner could not bind the firm by acts and contracts, beneficial to the joint concern, and within the scope of the partnership trade and business, without a prior *authority* or subsequent ratification, under seal, to do so? To deny to each the use of the partnership seal, for instruments requiring it, and which the exigencies of the joint concern required, would, at this day, seriously cripple and embarrass the success of mercantile business; and the tendency of Judicial decisions, is to hold that the previous authority or subsequent adoption in such cases, may be by parol. Judge *Story,* in his *Treatise on Partnerships,* states that the American Courts are strongly inclined to repudiate the stern rule of the Common Law, and to hold it inapplicable to the concerns of co-partners, whose intimate connection and mutual interest require such large power and ample confidence in the integrity of each other. And to maintain that it is sufficient, in all cases, where an express or an implied authority or confirmation could be justly established, not under seal, whether it be verbal, or in writing, or circumstantial. (*Page* 178, §121, *citing* 3 *Kent's Com. Lec.* 63, *pp.* 47, 48, 4th *Edition. See, also, Rawle's Smith on Contracts,* 255, *note.*)

Drumright and others *vs.* Philpot.

[3.] But concede that this position is untenable. It cannot be disputed that an agency, whether general or special, and whether conferred in one way or another, unless the contrary manifestly appears, is always construed to include all the usual and necessary means of executing it with effect. (2 *H. Bl.* 618. 5 *Bingham,* 442.    10 *Wend.* 218.    6 *S. & R.* 146.) And it has been held, that an agent, employed to sell a slave, may warrant him to be *sound,* unless inhibited by the terms of the authority under which he acted. *Gaines vs. McKinley,* (1 *Ala. Rep.* 446.) Gough, then, was clothed, by implication, with power to warrant the *soundness* of Beckey and her two children. Strike off the *seal* as being unauthorized, still, the *warranty* is good.

If the act of one partner be a good and valid act in itself, it will not be rendered the less so, if done by a specialty, provided the seal do not vary the liability. *Dukard vs. Case* (5 *Watts* 22). *Henessy vs. Western Bank* (6 *Watts & Serg.* 301). *Tapley vs. Butterfield* (1 *Metcalf* 515). These cases, and many others, upon the subject of the power of a partner to bind the firm, will be found classified in the note to *Livingston vs. Rosevelt* (1 *Amer. Lead. Cases,* 460). "Where a man", said Lord *Coke,* "doeth that which he is authorized to do and more, there it is good for that which is warranted, and void for the rest." (*Co. Litt.* 258, *a.*) "Where there is a complete execution of the authority", says Judge *Story,* "and something *ex abundanti* is added, which is improper, there the execution is good and the excess, only, is void". (*Story on Agency,* 201. *Citing Com. Dig. Attorney C.* 15.    *Paley on Agency,* by *Floyd,* 179, *and note n.*    1 *Livermore on Agency, ch.* 5, §1, *p.* 98, 101, 102, *edition* 1818).

And under the late Statute, which entitles either party, as matter of right, to make any amendment, either in form or substance, in pleadings, the declaration could have been remodelled, so as to make it conform to the instrument, not as a deed, but a written warranty only.

In any view of the subject then, the Court was right in the

instructions which it gave to the Jury, and our opinion is, that the judgment below be affirmed.