## CALHOUN v. CAWLEY.

1. As was decided by this court in *Parker* v. *Hughes*, 25 *Ga.* 374, "A grant from the State can not be set aside in any proceeding to which the State is not a party." If the decision in *Dart* v. *Orme*, 41 *Ga.* 376, is in conflict with that rendered in the case first mentioned, the older, under our statute, is to be followed as the true law. It would seem, however, that these two decisions are not inharmonious.
2. It results from the above, that though one who has filed a caveat to an application for a headright warrant fraudulently obtains from the State a grant to the land in controversy, and thus prevents the applicant, who would otherwise have been entitled thereto, from receiving such a grant, the latter can not, in his own name and right, maintain against the former a proceeding by scire facias for the purpose of setting aside and canceling the grant so fraudulently obtained.

Argued October 25, 1897. — Decided May 26, 1898.

Petition for scire facias. Before Judge Smith. Montgomery superior court. April term, 1897.

The petition of B. S. Calhoun, for scire facias requiring William Cawley to show cause why a certain land grant to him from the State should not be set aside, was demurred to by the defendant, on the grounds: (1) The State is not, but should be, a party. (2) No cause of action is set forth. (3) Petitioner does not allege that he was the owner of any adjoining lands at the time the grant was made. (4) Scire facias is not the right remedy for the matter complained of. (5) The judgment of the court of ordinary can not be thus collaterally attacked. (6) The superior court has no jurisdiction of the matter. The court sustained the demurrer, and the plaintiff excepted. The petition alleged: Petitioner is entitled under the laws of this State to a grant from the State to certain lands in said county, viz., about 123 acres in the 1386 district G. M., bounded on the north and east by lands of petitioner, on the south by Tiger creek, and on the west by Rachael Cawley, administratrix of James W. Cawley. On June 4, 1894, petitioner made application to the ordinary of said county, for a warrant to run said lands, as the law of headrights provides application may be made to have vacant land run. William Cawley filed a caveat on said date, and the matter was appealed to the superior court. On December 11, 1895, the judge

of the superior court granted an order dismissing the caveat and ordering the ordinary to issue his warrant to have the land run, in order that petitioner might have the land granted to him.  During the pendency of the issue made by the application and caveat, said Cawley, without giving petitioner the notice required by law, and without complying with the law in other respects, had the land run, and made application to the State for a grant, which grant was at first refused for the reason that it did not appear of record that the notices required by law to be given to adjoining landowners was given.  After the refusal of the secretary of State to issue the grant, Cawley, by false and fraudulent representations, viz. that legal notices had been given all adjoining landowners, succeeded in procuring from the secretary of State, on June 13, 1894, a grant to all or a portion of said tract of land.  Petitioner's application for the warrant to run the land is the only legal application that has been made, and the unlawful grant issued by the secretary of State to William Cawley is a cloud upon his right and title to the land.

*J. B. Geiger*, for plaintiff.   *J. H. Martin*, for defendant.

LUMPKIN, P. J.   1. A proper determination of the controlling question presented by the case now before us involves a consideration of the right of a private citizen to avail himself of the writ of scire facias in order that a grant from the State to a third person may be revoked and set aside.   It becomes necessary, in view of the uncertainty which apparently envelops our law upon this subject, to notice briefly the nature and purpose of this writ under the English practice, from which we have borrowed this form of procedure.   "In England, a scire facias is an original action when it is issued to repeal letters patent."   2 Rap. & Law. L. Dic. 1153.   It is the proper remedy to be pursued in the event a grant has been improvidently made to one not entitled thereto, and lies "at the suit of the Queen, or the first patentee, where a patent for the same thing [has] been granted to two persons."   21 Am. & Eng. Enc. L. 879.   "Where the crown hath unadvisedly granted anything by letters patent, which ought not to be granted, or

where the patentee hath done an act which amounts to a forfeiture of the grant, the remedy to repeal the patent is by writ of scire facias in chancery. This may be brought either on the part of the King, in order to resume the thing granted; or, if the grant be injurious to a subject, the King is bound of right to permit him (upon his petition) to use his royal name for repealing the patent in a scire facias." 3 Bl. Com. 260–261. To the same effect, see 2 Bouv. Law Dic. 614. "This privilege of suing in the name of the crown for the repeal of the patent is granted to prevent multiplicity of suits." Ibid. 615, citing 2 Wms. Saund. 72, notes. It is to be observed that, though the writ might issue upon the petition of a subject, the suit was invariably brought in the right and in the name of the sovereign.

The procedure which obtained in this class of cases was thus explained by Judge Lumpkin in *Walker* v. *Wells*, 17 *Ga.* 550–551: "In England, grants are issued by the Lord Chancellor, after affixing the great seal of the United Kingdom to them; and a record is made of them in the Court of Chancery. Consequently, when it is proposed, there, to vacate a grant, the writ of scire facias issues from the Common Law side of the Court of Chancery, where the grant is enrolled, and is there adjudicated unless the pleadings terminate in an issue or issues of fact. If they do, the pleadings are made up in the Rolls office, and the record sent into the King's Bench, to be tried by a jury, where, on a verdict had, the judgment is rendered." It is obvious that this mode of procedure is out of the question in this State. In the first place, we have no Lord Chancellor, nor any officer exercising the peculiar functions which in England devolved upon that high official, and we have long since departed from the practice of instituting actions in the manner which formerly prevailed in that country. Besides, as is pointed out by Judge Lumpkin, "in Georgia, grants are enrolled in the office of the secretary of the State, which is an establishment not only distinct from any of the courts of this State, but belonging to another and independent branch of the government; and as "a scire facias is always founded upon a record, and issues from and is made returnable to the court where the record is kept," it is not to be wondered at that he

put the question: "Without legislation, then, how can the courts acquire jurisdiction by process of scire facias over disputed questions relative to grants?" The particular difficulty thus suggested was met by the adoption of the Code of 1863, § 2332, which provided that: "Grants issued by the State may be set aside by the superior court of the county where the land lies, upon a writ of scire facias, on the ground that the same were obtained by fraud or willful misrepresentations by the grantee, or those in privity with him, to the officers of the State; or on the ground of collusion between the grantee and the said officers; or of fraud, accident, or mistake by the officers, known to the grantee." Civil Code, § 3219. This section seems to have been framed in conformity to the decision rendered by this court in *Hilliard* v. *Connelly*, 7 *Ga.* 172. There the act of 1837, which was an attempt to clothe the Governor "with the power to revoke the State's grant after it has issued, and to determine the rights of parties litigating under it, and to issue a new grant in conformity with any alterations he may make," was attacked as unconstitutional. In dealing with the question thus presented, Nisbet, J., said : "When the State issues her grant, under her great seal, she can not recall it. It is the irrevocable testimony that she has divested herself of the thing granted. Grants do not exist as title against the State during her pleasure. If the Government can recall its grant for one cause, why not for all causes? If it can at all, it is a pure despotism. The grant, when it has issued, is a contract. One party to a contract can not set it aside, although that party be a sovereign State. If conflicting claims or rights or interests spring up under that contract, by reason of mistake, error, fraud, or any other cause, the courts of justice are open for their adjustment." Accordingly, it was, in the case just cited, held that the recourse of the State, in the event a grant had been by its officials improvidently issued, was to institute a legal proceeding looking to the repeal of its grant, the executive department of the State having no power to arbitrarily recall a grant once formally made to a subject.

It may, therefore, be safely asserted that there can no longer be any room for doubt that the State can, in its own name and

in its-own right, resort to the writ of scire facias in order to
effect a repeal of a grant improvidently issued.　It is equally
true, however, that there is an entire absence of legislation con-
ferring upon a private citizen the right to institute such a pro-
ceeding in his own name under any circumstances; and, with-
out legislation upon the subject, the inevitable conclusion must
be that this remedy lies only at the instance, and in the name,
of the sovereign, and can not be taken advantage of by a sub-
ject in an independent action seeking relief against an injury
he has incidentally suffered by reason of the issuance of a grant
wrongfully secured by a third person.　As has been seen, un-
der the English practice no such right existed, the action be-
ing invariably instituted in the name and in the right of the
crown.　As explained by Blackstone, if the King by his grant
unadvisedly prejudiced the rights of a subject, common justice
demanded that the latter should, upon his petition, be per-
mitted to use the former's "royal name for repealing the patent
in a scire facias."　Such petition was addressed to the Chan-
cellor, who, as the keeper of the King's conscience, passed upon
the subject's complaint of the sovereign's act by which he was
injured, and, in a proper case, issued in the name of the King
the writ necessary to a prosecution of the suit.　In other words,
the consent of the crown to the use of its name had first to be
obtained before any action could be instituted; and, as a mat-
ter of course, the subject himself having no cause of action
against the grantee, the suit thenceforth proceeded in the right
of the crown, it being the sole party at liberty to complain of
the fraud or deception practiced upon it by the grantee in
wrongfully inducing the grant to be made.

That a subject can not himself maintain an action to revoke
a grant issued by a sovereign power, nor arbitrarily assume to
embark it into litigation by attempting to make an unauthor-
ized use of its name, was settled by this court in *Parker* v.
*Hughes*, 25 *Ga.* 374, wherein it was held that: "A grant from
the State can not be set aside in any proceeding to which the
State is not a party," and the "State, by the Governor, can
not be made a party complainant without the Governor's con-
sent."　There, an action was instituted by Parker in his own

name, alleging, in brief, that one Hughes had fraudulently obtained from the State a grant including some 700 acres of vacant land in addition to the tract to which he was entitled under a headright warrant, and accordingly the plaintiff was cut off from taking the necessary steps to secure a warrant under the headright laws to the land thus fraudulently included in the grant made to the defendant. His action was demurred to, "on the ground that [he] had no right to sue in the matter, and that the grant could only be set aside in chancery by a writ of scire facias, sued out on the part of the government, or by some individual prosecuting in its name." The plaintiff offered to amend "by making the State a party through the Governor or the solicitor-general of the circuit," but the trial judge refused to allow the proposed amendment, and dismissed the action. To this ruling exception was taken; and in dealing with the question thus presented, this court, speaking through Benning, J., said: "In our judgment the court was right in sustaining the demurrer. Was the court also right in refusing to allow the complainant to amend the bill by making the State a party through the Governor or the solicitor-general? We think so. The Governor or the solicitor-general could not be made a party complainant without his own consent; and it does not appear that the complainant, Parker, had obtained such consent; it rather appears that he had not." It is to be observed that the court did not, in that case, undertake to decide whether, had the plaintiff secured the consent of the Governor or solicitor-general, the action would have been maintainable; although Judge Benning remarked that, speaking for himself alone, he saw "no objection to a bill by the Governor to set aside this grant." In the absence of any legislation on the subject, it is not clear whether the view expressed by Judge Benning is to be accepted as indicating correctly the proper steps to be taken by a subject who desires to make use of the name of the State in prosecuting an action of this nature. We do not feel sure that the Governor would be the proper official to institute in behalf of the State a proceeding to revoke a grant improvidently made, for the duty of representing the State in the institution and prosecution of

such an action would, under our law as it now stands, seem to devolve upon the attorney-general of the State, he being the official designated to bring in behalf of the State quo warranto and similar proceedings.   Nor can it be said that the Governor, rather than the attorney-general or other State official, is the "keeper of the conscience" of the State, and therefore the proper person to pass upon the question whether, in a particular instance, the State has made a grant injurious to a subject and is therefore to be deemed bound, in common justice, to consent to the use of its name by the subject in an action instituted to revoke and set aside such grant.   Obviously, the English practice which, while very properly declining to recognize any legal right on the part of a subject to institute in his own name an action to set aside a grant to which he was no party, as matter of grace allowed him to institute an action in the name and in the right of the crown, whenever it had unwittingly by its own act prejudiced his interests, very highly commends itself as upholding the doctrine that the sovereign is always under a most solemn duty to protect the subject.  Therefore, it is to be deplored that in attempting to adjust the practice of the English courts to the mode of procedure which now obtains in Georgia, it should have been left a matter of doubt as to what is the proper course to pursue in order to obtain the consent of the State to a scire facias being prosecuted by a citizen in its name.   It seems that legislation upon this subject is needed.   At all events, a statute clearly declaring the rights of private persons in the premises would serve a very useful purpose in relieving the question of all difficulty.

The law as announced in 25 *Ga.*, cited supra, and which we are now following, was not changed by section 2332 of the first code (Civil Code, § 3219); for there is not one word in that section conferring upon a private citizen the right to proceed by scire facias to set aside or revoke a grant.   That section simply prescribes the form of remedy, and can not be held to dispense with the necessity of having the State as a party to a proceeding of this nature.

Upon a casual glance, the decision in *Dart* v. *Orme*, 41 *Ga.* 376, may seem to be out of harmony with that rendered in *Par-*

*ker's* case, supra.   The two cases are, however, in our opinion,
clearly distinguishable.   In that of Dart and others, a bill in
equity was filed by the complainants alleging that they were
the owners of certain lots in Brunswick, having derived their
title thereto under ancient grants made by the Crown of Great
Britain and the State of Georgia, and that the defendants, long
subsequently, "under pretence of authority under the headright
acts of this State, surveyed said lots so dedicated and granted,
as vacant lands, and obtained grants therefor from the State."
Accordingly, the complainants prayed that these latter grants
be canceled as a cloud upon their title, it being further alleged
that the defendants were wrongfully asserting their claim of title,
having sold some of the lots and having offered other lots for
sale, which they were "threatening to occupy."   The bill was
demurred to on the grounds, (1) that it was *multifarious,* and
(2) because there was no equity in it, the complainants having
an adequate remedy at common law.   The question was not
raised that the State should have been a party to the proceeding,
nor was this point passed upon by the court.   On the contrary,
all that was said in regard to the question of parties was in
reply to that ground of the demurrer which was based on the
contention of the defendants that there was no equity in the bill
for the reason that the complainants had a full and complete
remedy at law, the court remarking : "It is true that under the
provisions of our code, in a contest between individual citizens,
grants to lands may be impeached before the courts, where they
are void upon their face or are issued without authority of law,
or against a prohibition in a statute, or for property to which
the State had no title.  Code, section 2330.   It is also true that
this may be done without making the State party to the suit,
but, in our judgment, according to the allegations made in their
bill, the complainants' remedy in a court of law would not be
as complete and effectual as in a court of equity."   The sec-
tion referred to (now § 3220 of the Civil Code) is in almost the
precise language used in *Hilliard* v. *Connelly,* supra, in which the
rule was stated to be that grants void upon their face, or issued
without authority of law, could be attacked collaterally in a
court of law whenever set up and relied upon.   Consequently,

that section could not be invoked in any direct proceeding to set aside a grant, but could prove available only in an action of ejectment, or like proceeding, where a grant void upon its face or issued in violation of law was relied on by one of the parties. It is therefore obvious that the court correctly held in *Dart's* case that the complainants did not have an adequate legal remedy against the contemplated injury alleged to be threatening them.

Even had the point been directly made in that case that the State should have been made a party plaintiff, we think the decision should have been the same as that rendered. The purpose of the action was clearly not to *revoke* a grant made by the State on the ground of a fraud perpetrated upon it, but, independently of any question concerning the good faith of the grantees in procuring the grant from the State, to invoke the aid of a court of equity in order to have the same canceled as a cloud upon the complainants' title. In other words, they alleged themselves to be the owners of the paramount title; that the grant was being injuriously set up in opposition to their *vested* rights in the premises, and should therefore be delivered up and canceled. To remove a cloud upon title is peculiarly and exclusively within the province of a court of equity, the remedy thus afforded being one unknown to a court of law, the practice in which makes no provision for enjoining a threatened injury, but merely provides for restitution after the mischief has been done. In a proceeding to remove an alleged cloud upon title, naturally the sole inquiry is whether, as between the complainant and the defendant, the latter is equitably entitled to retain in his possession the muniments of title sought to be canceled, without regard to the good faith with which he obtained the same. It follows, of course, that in such an investigation the grantor under whom the defendant claims is by no means a necessary and indispensable party, though, in a given instance, as where a grantor warrants the title, he may very properly be brought into court to defend the action. It would therefore seem that in *Dart's* case the most eminently proper and expedient, if not the sole, remedy open to the complainants was pursued. Independently of the right of the State to enter proceedings to revoke its grant, they had a separate

and distinct cause of action which they could maintain in their own name and right, as the defendants were alleged to be inequitably and wrongfully asserting their grant to the prejudice and injury of complainants, who were the true owners of the land and therefore had a *vested* interest therein which they could themselves set up in court and thereon demand appropriate protection. Granting that the State had by its own ill-advised act brought about the emergency which threatened to prejudice their interests, and could repair the wrong unwittingly done them by instituting, or permitting them to institute in its name, a scire facias to repeal its grant to the defendants, it by no means follows that the State would be under any bounden duty to do so, for the reason that the courts were open to the complainants to bring and maintain in their own name and right a bill in equity whereby they could secure full and complete relief. Certainly, where a sovereign State provides through its judiciary ample protection to a subject, and there is no occasion for the State itself to pursue a remedy open to it alone in order that the rights of its subject may be preserved, it can not be said to be under any obligation whatever to resort to this method of performing its duty of respecting its subject's rights and interests in the premises. Nor would it be just or proper for the subject to petition the sovereign to exercise its prerogative for his protection, on the ground that the sovereign had by its own act injured him, when he was himself able to get full relief simply by availing himself of a remedy already provided and open to him, by which the wrong he had suffered could be speedily redressed.

More in this connection need not now be said. As a purely practical question, it is entirely immaterial, so far as the present controversy is concerned, whether the decision in *Dart's* case is or is not in conflict with that rendered in the case of *Parker* v. *Hughes*, supra; for the case last mentioned is the older of the two, and is therefore, under the terms of our statute, to be followed as the true law, no motion for leave to review the decision therein rendered having been made when the case now before us came on for argument. See Acts 1858, p. 74, and *Lucas* v. *Lucas*, 30 *Ga.* 202, from which it seems

clear that the decisions of this court, when rendered by a full bench, should be treated as having the force of statutes, whether made before or after the passage of the act of December 9, 1858. The law embraced in section 5588 of the Civil Code was originally copied from this act.

2. Applying the law as above announced to the facts of this case, our conclusion is that the trial judge was right in sustaining the demurrer interposed by the defendant to the plaintiff's petition. The point was distinctly raised by the demurrer that the State was not, although it should have been, a party. The plaintiff made no offer to amend his petition in order to remove this objection, but stood solely upon his contention that he was entitled, in his own name and in his own right, to institute and maintain a scire facias in order that he might remove the obstacle which the grant from the State presented to his proceeding in the manner prescribed by law for securing a headright warrant. The facts of this case will be found to be very similar to those appearing in *Parker's* case, which is controlling as to the question now under discussion. Irrespective, therefore, of other questions raised by the defendant's demurrer, the plaintiff's petition was properly dismissed. What may be the merits of his complaint against the defendant is a question not now properly presented for determination. Certain it is that the plaintiff is not at liberty to invoke in his behalf the remedy he elected to pursue.

*Judgment affirmed. Argued before Lewis, J., became a member of the court. The other Justices concurring.*