## STRONG *v.* WEST.

1. Where an agency is created for the performance of an act beneficial to the principal, all the usual modes and means of accomplishing the objects of the agency are included in its creation, unless the contrary clearly appears. Accordingly, where one holding a promissory note against another, with a claim on certain land as security, sends the note and papers evidencing her claim to a collecting agency, a power is created in the latter to procure the services of an attorney, if necessary, to collect the note and enforce the security.

2. Where the principal prematurely terminates the agency, the agent's right to compensation is not lost, and, as to amount, it is to be measured by the terms of the contract when the same is fixed thereby. Thus, where an attorney agreed that, as compensation for the recovery of certain property pledged to secure a debt, he would accept a specified amount and look for the same to the excess for which he could sell the property over and above the amount necessary to satisfy the debt due to his client, and after making the recovery, but before being allowed a fair opportunity to make a sale, the client withdrew the property from his hands, he had a right of action against the client for the amount agreed upon in the contract between them.

Argued March 9, — Decided April 5, 1900.

Complaint. Before Judge Nottingham. City court of Macon. August 10, 1899.

*Steed & Ryals,* for plaintiff in error.
*Hardeman & Moore,* contra.

LITTLE, J. West sued out an attachment against Mrs. Strong, a resident of the State of New York, to recover two hundred dollars for legal services rendered in arranging and securing a certain claim which she held against Mrs. Sarah J. Toole for the sum of three thousand dollars. The petition alleges that he did arrange the business and secure the claim in a proper and complete manner, and that Mrs. Strong was aware of his action in so doing, and ratified and accepted his services; and he prays a judgment, to be levied on the property

attached. At the conclusion of the evidence for the plaintiff, the defendant moved for a nonsuit, which was refused, and Mrs. Strong excepted pendente lite. The trial resulted in a verdict for the plaintiff for two hundred dollars, besides interest, and Mrs. Strong submitted a motion for a new trial, which was overruled, and she excepted, averring that the court erred in refusing to grant the nonsuit and in overruling the motion for new trial. · The principles of law involved in the case are few, and a brief reference to the evidence will be found sufficient for their application. Mrs. Strong purchased from the Lombard Investment Company a promissory note for the principal sum of three thousand dollars, dated December 7, 1891, payable to the order of the Lombard Investment Company, and signed by Sarah J. Toole and John F. Toole, with certain interest coupon notes attached. This note was secured by a deed of the same date, which conveyed title to certain land in the city of Macon to the Lombard Investment Company. It appears that the Lombard Investment Company, when it transferred the note to Mrs. Strong, did not convey to her the title to the land held by it as security for its payment; that it failed without having done so, its assets were sold through a receiver appointed by the court, and the corporation ceased to do business. The Concordia Loan and Trust Company was organized after the failure of the Lombard Company, and succeeded, in a measure at least, to the collection of loans which had been sold and transferred by the Lombard Company to third parties. After her debt became due, and there was a default in payment, Mrs. Strong sent her note to the Concordia Company, whose principal office was in Kansas City, Missouri, for collection. That company in turn sent the claim to the Chattanooga Savings Bank, which in turn sent it to West, an attorney at law, at Macon, where the property given as security was located. The contemplation of all the parties was that the amount due on the note should be realized by a sale of the property originally conveyed to the Lombard Company, if it should become necessary. On receipt of the papers, West wrote the Chattanooga Bank that there was a second mortgagee who would, he thought, buy the property at the sale, but that, if he did not,

the property would readily sell for the amount of the debt and all cost and arrears; and proposed that if the property was not bought by some one, and " your investor has to carry it, the only expense will be that of the taxes and the cost of advertising. . ' . I will be willing, for my services as attorney, to take my chances of getting my fee from a sale of the property for a sum sufficient to pay it, in excess of the amount necessary to bring your investor out whole."

After this point had been reached, very much correspondence, all of which, we presume, is in the record before us, took place between West and the Chattanooga Bank, and that bank and the Concordia Company, and the Concordia Company with Mrs. Strong. West had no direct communication with the Concordia Company nor Mrs. Strong, nor they with him. The Chattanooga Bank communicated directly with the Concordia Company, and the latter with Mrs. Strong. Because of the fact that Mrs. Strong had no assignment or proper transfer of the title to the land originally given as security, much difficulty was occasioned in an attempt to have the security appropriated to the payment of the note in the hands of Mrs. Strong. This was finally accomplished by West to the apparent satisfaction of the parties, by first having a sale of the property and a transfer to Mrs. Strong of the title there acquired; and also by procuring an absolute conveyance to Mrs. Strong from the original grantors, on condition that they should occupy the premises for a given time at a stated rent, with the privilege of repurchasing the same, or making a sale for an amount in excess of. Mrs. Strong's debt together with expenses, etc. The property was taken charge of by West, who collected the rents, accounting for the same to the Chattanooga Bank. While this situation existed, and before West had effected a sale, Mrs. Strong directed the Concordia Company, to whom her papers were originally sent, to have a named real estate agent in Macon to take charge of the property in her name; which thus passed from the custody of West. On demand for payment for his services, Mrs. Strong and the Concordia Company each denied that they had employed him or knew that he was employed. The Chattanooga Bank, through whom his contract of

employment was made, referred him to the fact that payment
for his services was to be obtained through a sale of the prop-
erty.   Being thus denied on all sides, West sued out the at-
tachment and had it levied on the property; and we are now
asked to set aside a second verdict rendered in his favor. There
are thirty-three grounds set out in the motion for a new trial
in this case, while the specifications of error are divided and
subdivided, making  in  the  aggregate  a voluminous record,
which we have gone over carefully, and, without repeating the
grounds of the motion here, must content ourselves with saying,
in a general way, that we find none of the grounds to contain
any reversible error; nor do we think that the court erred in
refusing to grant a nonsuit which the defendant asked at the
conclusion of the evidence for the plaintiff.

1. There is, as we understand the record, but one legal ques-
tion involved which is of sufficient importance to elicit any
discussion; that is, whether, under the facts disclosed, West was
as a matter of law the agent of Mrs. Strong in the collection of
her claim and in securing the land which was originally con-
veyed to the Lombard Company as security for the note which
she held.   We think he was.   It is conceded that the Concordia
Company was the direct agent of Mrs. Strong; that the note and
her claim that the land was security was sent to that company
by her for the purpose of collecting the amount of the note.
Of course she knew, at the time these papers were sent to the
Concordia Company, that if legal proceedings were necessary to
enforce her rights, they would have to be instituted in another
State and by an attorney.   Consequently, when she chose the
Concordia Company as her immediate representative, with
knowledge that in a certain event that company would have to
employ an attorney in the State of Georgia to enforce her rights,
the power on the part of that agent to make the necessary em-
ployment went to her agent with the transmission of the papers.
Section 3023 of our Civil Code embodies a sound proposition
taken from the common law; that is, that the agent's authority
will be construed to include all necessary and usual means for
effectually executing it.   In section 85 of his work on Agency,
Judge Story declares that, whether the agency be of a special

nature or of a general nature, it may be laid down as a univer-
sal principle that it includes, unless the inference is especially
excluded by other circumstances, all the usual modes and means
of accomplishing the object and ends of the agency.   See also
*Drumright* v. *Philpot,* 16 *Ga.* 431.   In section 86 of the same
volume the author declares, that whenever an authority is given
to an agent to transact business for the principal in another
State, it must, in the absence of all counter proofs, be presumed
to include the authority to transact it in the forms and by the
instruments and according to the laws of the place where it is
to be done; and each party, under such circumstances, is bound
to know what such forms and instruments are, and what acts
are required by those laws.   See also Mechem on Agency, § 194.
It must therefore follow, if the services of an attorney are nec-
essary to execute the duties of a created agency, that the person
intrusted with those duties, if not himself an attorney, is in-
vested with the power to procure the services of an attorney for
his principal, and that the attorney so employed is the attorney
of the principal and not of the agent.   See 44 Cal. 204.
This court, in the case of *Barclay* v. *Hopkins,* 59 *Ga.* 565, de-
clared that if an agent was only expressly empowered to place
a paper belonging to his principal in the hands of an attorney
for collection, he was nevertheless also empowered to make a con-
tract in regard to the manner and terms of the collection; that
the one power necessarily carried with it the other.

If these views of the law are sound, then notwithstanding Mrs.
Strong may not have known of the employment of West, and
notwithstanding the further fact that her immediate agent did
not know of such employment, the result must still be the same,
because when she charged the Concordia Company, as her
agent, with the duty of collecting her note and enforcing her
security against Toole, she gave to it authority to employ all
proper means to do so; and when that agent employed a sub-
agent more conveniently located to accomplish her purpose,
the subagent became for that purpose the agent of the principal,
for it was but one of the means of accomplishing the agency;
and when, after default, it was necessary and proper, in order
to effect the collection, that the services of an attorney should

be obtained, and through the subagent these papers found their way into the hands of West who agreed with such agent on a named sum as a fair compensation for his services, he took them as the attorney of the owner, and is entitled to remuneration for such professional services as he may have rendered in connection therewith. In addition to this view of the law which is to govern the rights of the parties, the evidence shows that Mrs. Strong in accepting the benefit of the services rendered by West ratified his employment, even if it had not been originally authorized. It is a general proposition, under the law of agency, that authority to do an act is presumed from subsequent acts of assent and acquiescence, and that slight circumstances and small matters will sometimes suffice to raise the presumption of ratification. Story on Agency, § 253. See also *Murray* v. *Walker,* 44 *Ga.* 58, and *Southern Express Co.* v. *Palmer,* 48 *Ga.* 85. Under either of these views, the evidence is amply sufficient to support the claim of West that he was legally the agent of Mrs. Strong in obtaining possession of the property in Macon which had been originally given as security for her debt.

2. It is, however, urged that under the contract West was to be paid from the proceeds of the sale of the property. This is true, and had he been allowed to retain possession of it a reasonable time for the purpose of making such sale, he could not, under his contract, have looked to any other source for payment. But he was entitled to a fair and reasonable opportunity to make the sale. Where an agency is prematurely terminated by the act of the principal, the agent's right of recovery is measured by the terms of the agreement. See 1 Am. & Eng. Enc. L. (1st ed.) 399, and authorities cited in note 3. It appears in this case that the work of getting possession of the property, as to which Mrs. Strong was equitably entitled to be subrogated to the rights of the Lombard Company, was rendered very difficult on account of the failure of the Lombard Company to pass to her the legal title, but this was finally accomplished by West, who after recovery was in possession with the right to make a sale. It does not appear that he was mismanaging the property in any respect, nor, with any degree

of certainty, that he could not have made a sale for a sufficient amount to have paid the debt and reimbursed himself. Under the terms of his contract he was entitled to a full opportunity to bring about this result, and when he was deprived of this right by the explicit directions of Mrs. Strong that the property should be taken from his hands and turned over to a real estate agent of her own selection, she thereby deprived West of the means to which he had agreed to look for reimbursement under the terms of the original contract, and, having done so, she became liable to pay him for his services. The evidence sustains the verdict, and the court did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concurring.*