## 11478. ALLEN v. MONTGOMERY.

1. Where there is a lease for a year and the tenant, after the expiration of the lease, by consent of both parties, remains in possession of the premises and continues to pay rent to the landlord under the terms of the lease, which rent is accepted by the landlord, the law implies a renewal of the lease for another year.

2. Where it is not essential to the validity of a contract that it be executed under seal,. but where it is, in behalf of a principal, executed under seal by an agent possessing legal authority under seal to execute it and bind his principal, the contract will, as against the principal, be disregarded as a specialty and be treated as only a simple contract in writing. Its execution under seal not being essential to the validity of the transaction, the seal will be treated as surplusage. *Drumright* v. *Philpot,* 16 *Ga.* 424 (3), 431 (60 Am. Dec. 738). That decision, being by a full bench, and not having been formally reviewed and overruled, was not superseded by subsequent conflicting decisions.

52

(*a*) Even though it might be adjudged that an agent is unauthorized, when acting under verbal authority only, to bind his principal by a contract in writing (but see *Brandon* v. *Pritchett*, 126 *Ga.* 286, 55 S. E. 241, 7 Ann. Cas. 1093), still, where the rent contract as executed by the agent is for a term of only one year, and therefore not required by the statute to be in writing, the fact that it may have been actually reduced to writing would not operate to render it invalid as against principal.

3. Where one in possession of premises, either as a tenant holding over or as a tenant at will, makes a written offer to the landlord to become a tenant for the premises for a year, and the offer is accompanied with a sum of money in payment of a month's rent for the premises under the proposed contract, and the landlord makes no reply to this communication of an offer, but accepts the money and allows the tenant to remain on the premises, such conduct upon the part of the tenant and the landlord would authorize the inference that there was a tacit acceptance by the landlord of the offer of the tenant, and that a lease contract for a year was created between the parties.

DECIDED NOVEMBER 11, 1920.

Certiorari; from Fulton superior court — Judge Bell. March 16, 1920.

Application for certiorari was denied by the Supreme Court.

*W. S. Dillon, C. M. Lancaster,* for plaintiff in error.

*Etheridge, Sams & Etheridge,* contra.

STEPHENS, J. 1. This was a proceeding by a landlord to dispossess his tenant, upon the ground that there was a tenancy at will and that the tenant had, by the landlord, been given sixty-days' notice, as required by the statute, of an intention on the part of the landlord to terminate the tenancy. The sole question for our determination is whether or not the tenant, when the landlord sought to dispossess him, held as a tenant at will or under an unexpired lease for a year. The tenant had rented the premises under a written lease for a "term of twelve months commencing on the 1st day of April, 1918, and ending on the 31st day of March, 1919." This lease had already expired, and the tenant was, at the time the landlord sought to dispossess him, living on the premises under either an express or an implied renewal of this lease, or under a separate and distinct agreement for another year, or as a tenant at will. If the tenancy was at will the tenant was properly dispossessed; but if the tenancy was for a year, either under a renewal of the old lease or under a new contract for a year, the tenant was, since his term had not expired, improperly dispossessed.

The evidence shows that on the 11th day of April, 1919, after the expiration of the lease which expired on the 31st day of March, 1919, the tenant remained in possession and paid to the agent of the landlord as rent for the said month of April the amount stipulated in the lease as the monthly rental for the premises, which amount was accepted by the agent, who, as is inferable from the evidence, was acting for the landlord. Such acceptance of rent by the landlord amounted to a consent to allow the tenant to remain on the premises as tenant. " If there be a lease for a year and by consent of both parties the tenant continue in possession afterwards, the law implies a tacit renovation of the contract. They are supposed to have renewed the old agreement, which·was to hold for a year." Lord Mansfield in Wright v. Darby, 1 T. R. 161; cited with approval in *Roberson* v. *Simons,* 109 *Ga.* 360, 362 (34 S. E. 604). See also *Kennesaw Guano Co.* v. *Miles,* 132 *Ga.* 763, 770 (64 *S. E.* 1087) ; *Cavanaugh* v. *Clinch,* 88 *Ga.* 610 (15 S. E. 673) ; *Ridgway* v. *Bryant,* 8 *Ga. App.* 564 (70 S. E. 28). The tenant holding for a year under renewal of the original lease can not afterwards be dispossessed as a tenant at will after sixty days' notice to him by the landlord of a termination of such tenancy.

2. It is contended, however, in behalf of the landlord, that the original lease was invalid and no tenancy for a year was thereby created. The invalidity of the lease is urged upon the ground that the agent of the landlord who executed the lease had no authority to do so, since the lease was a written instrument under seal and there was no authority under seal authorizing the agent to execute it in behalf of the landlord. While it is true that an agent, without authority under seal, can not bind his principal by a contract under seal, yet it is nevertheless true that where a contract does not, for its validity, require a seal, its execution under seal by an agent without authority under seal does not necessarily render the instrument void as against the principal. If a contract is unnecessarily executed under seal, it may nevertheless be treated as a valid common-law parol contract. If the sealed instrument would have been a valid contract without the seal, and its execution without a seal was within the authority of the agent executing it, its execution under seal will be treated as surplusage. While the contract would, as against the prin-

cipal, be void as a specialty, it would nevertheless be a good and valid writing by parol. In *Drumright* v. *Philpot,* 16 *Ga.* 424 (60 Am. Dec. 738), it is held: "Where there is a complete execution of his authority by an agent, and something more is added, not warranted, the execution is good for that which is authorized, and the excess only is void." The court in its opinion says: "It can not be disputed that an agency, whether general or special and whether conferred in one way or another, unless the contrary manifestly appears, is always construed to include all the usual and necessary means of executing it with effect. [Citations.] And it has been held that an agent, employed to sell a slave, may warrant him to be sound, unless inhibited by the terms of the authority under which he acted. [Citations.] Gouch [the agent], then, was clothed, by implication, with power to warrant the soundness of Becky and her two children. Strike off the seal as being unauthorized, still, the warranty is good." The court then proceeds to quote from Lord Coke: "Where a man doeth that which he is authorized to do and more, there it is good for that which is warranted, and void for the rest"; and quotes from Judge Story: "Where there is a complete execution of the authority and something ex abundanti is added, which is improper, there the execution is good and the excess, only, is void."

The written lease, therefore, in the instant case — treating the seal as surplusage — constituted a simple contract in writing between the landlord and the tenant. It was signed by the agent of the landlord styling himself as agent for his principal, and recited in its body that it was a contract between the agent by name describing himself as the duly constituted agent for the landlord, and describing the premises leased, which the evidence shows belonged to the principal, and which the agent had general parol authority to rent upon such terms as he thought best. "Contracts not under seal, other than negotiable instruments, require but little observance of mere form. The intention of the parties is the prevailing consideration in the construction of this class of contracts; and the rule is well established that, if the nature and circumstances of the transaction show that the intention was to bind the principal and not the agent, effect will be given to such intention, though the agent signs in his own name merely." 1 Am. & Eng. Ency. of Law (2d ed.), 1050, 1051. See

2 C. J. 674; *Merchants' Bank of Macon* v. *Central Bank of Georgia,* 1 *Ga.* 418 (44 Am. Dec. 665); *Cleveland* v. *Stewart,* 3 *Ga.* 283; *Raleigh & Gaston R. Co.* v. *Pullman Co.,* 122 *Ga.* 700, 709 (50 S. E. 1008). This contract, if renewed, continued for another year, and the tenant could not be dispossessed as a tenant at will after sixty days' notice from his landlord.

The ruling here relied upon, in *Drumright* v. *Philpot,* can not be disposed of as being obiter, upon the ground that the decision could have been predicated alone upon the other proposition that a partner, as such, acting under parol authority, or where there is ratification not under seal, may bind the partnership by his act under seal. Since the court predicated its decision upon both of these propositions, neither one of the propositions can be regarded as obiter. 26 Am. & Eng. Ency. of Law (2d ed.), 171. As a matter of fact, the court seemed to rely with more confidence upon the proposition that since it was not essential to the validity of the transaction to execute the contract under seal, the seal would be treated as surplusage and the partner regarded as a mere agent for the partnership, who, if acting under parol authority, or if there was ratification of his act not under seal, could bind the partnership by the instrument treated as a simple contract. See 16 *Ga.* 431. Also see paper by A. H. Davis on "Sealed Instruments," 5 Ga. Bar Asso. R. (1888), 171, 174-5. For authorities holding that a partner is an agent for the partnership, see Story on Partnership, 1; 30 Cyc. 477; *Merchants & Farmers Bank* v. *Johnston,* 130 *Ga.* 661, 664 (61 S. E. 543, 17 L. R. A. (N. S.) 969, 14 Ann. Cas. 546).

The original common-law rule that a seal is essential to the validity of a writing is medieval nonsense, and should have no place in modern jurisprudence. Chief Justice Lumpkin condemned it in his opinion in *Drumright* v. *Philpot,* with the statement that it had been repudiated by both Lord Mansfield and Chief Justice Marshall. The decision in *Drumright* v. *Philpot* was an effort to break away from what Chief Justice Lumpkin there characterized as a "threadbare technicality." See also his opinion in *Lowe* v. *Morris,* 13 *Ga.* 147. The doctrine of *Drumright* v. *Philpot* is in accordance with the weight of authority in America, and seems also to be the law in England. See Papley *v.* Butterfield, 1 Metcalf (Mass. 1840), 515 (35 Am. Dec. 374);

Wagoner *v.* Watts, 44 N. J. L. 126; Edwards *v.* Dillon, 147 Ill. 14 (37 Am. St. Rep. 199), and cases there cited; 52 L. R. A. (N. S.) 510, note; 1 Am. & Eng. Ency. of Law (2d ed.), 953; 2 C. J. 458; 1 Mechem on Agency (2d ed.), § 215; Story on Agency (8th ed.), § 49; 30 Cyc. 487, and cases cited; Hunter *v.* Parker, 7 Meeson & Welsby, 322; Bowstead on Agency (6th ed., London), 40 et seq.; Merchant *v.* Morton (1901, 2 K. B. 829); Lindley on Partnership (8th ed.), 173.

We are not unmindful of the decisions of the Supreme Court subsequent to *Drumright* v. *Philpot,* supra, which hold contrary to the doctrine of that case. In *Rowe* v. *Ware,* 30 *Ga.* 278, the Supreme Court, in holding that the authority of an agent to execute a contract under seal must be conferred upon the agent by an instrument under seal, also held that, even though a seal was not essential to the validity of the contract, the seal can not be disregarded and treated as surplusage. Judge Linton Stephens, in speaking for the court in that case, said: "But it was said that the bond need not have been under seal, though in point of fact it was so, and therefore the seal might be disregarded. Not so. The question was, whether Taylor had authority to sign the names of Hooks and Herndon to this bond as it is — sealed as it is. Whether a bond without a seal (to use for convenience a short but inaccurate phrase) would be valid has nothing to do with the case. If Taylor ever signed such an one, we know nothing of it. Was he legally authorized to sign the bond? is the question. He was not, and therefore this bond does not bind them." This case, which made no reference to *Drumright* v. *Philpot,* has been followed with approval in subsequent decisions of the Supreme Court, none of which review or question the ruling in *Drumright* v. *Philpot.* See *Pollard* v. *Gibbs,* 55 *Ga.* 45; *Overman* v. *Atkinson,* 102 *Ga.* 750 (29 S. E. 758); *Van Dyke* v. *Van Dyke,* 123 *Ga.* 686 (51 S. E. 582); *Brandon* v. *Pritchett,* 126 *Ga.* 286 (55 S. E. 241, 7 Ann. Cas. 1093); *Lynch* v. *Poole,* 138 *Ga.* 303 (75 S. E. 158); *Neely* v. *Stevens,* 138 *Ga.* 305 (75 S. E. 159); *Hayes* v. *City of Atlanta,* 1 *Ga. App.* 25 (57 S. E. 1087); *Dalton Buggy Co.* v. *Wood,* 7 *Ga. App.* 477 (67 S. E. 121). The decision in *Drumright* v. *Philpot* was rendered by a full bench, and has never been overruled. See references thereto in *Barclay* v. *Hopkins,* 59 *Ga.* 562; *Colquitt* v. *Smith,* 76 *Ga.* 709; *Strong* v. *West,*

110 *Ga.* 382 (35 S. E. 693); *Smith* v. *Farmers Mutual Ins. Asso.*, 111 *Ga.* 787 (36 S. E. 957); *Merchants & Farmers Bank* v. *Johnston*, 130 *Ga.* 661 (61 S. E. 543, 17 L. R. A. (N. S.) 969, 14 Ann. Cas. 546). Not being overruled, it therefore, under the peculiar rule obtaining in this State, speaks with the full force effect of a statute, and is not superseded by subsequent rulings in conflict with it. Civil Code (1910), § 6207; *Calhoun* v. *Cawley*, 104 *Ga.* 335 (30 S. E. 773); *Sheppard* v. *Bridges*, 137 *Ga.* 615, 626 (74 S. E. 245). The act of the legislature, approved December 9, 1858 (Ga. L. 1858, p. 74), giving statutory force and effect to full-bench decisions of the Supreme Court, was passed prior to the decision of *Rowe* v. *Ware*, 30 *Ga.* 278, supra. The provision in the Civil Code of 1895, § 5588 (also Civil Code of 1882, § 217), that a decision concurred in by a full bench of three Justices can not be overruled unless expressly questioned and reviewed and the court in its decision distinctly states whether it adheres to, over-rules, or modifies such decision, has never been repealed. The act of 1896 (Ga. L. 1896, p. 44), reorganizing the Supreme Court after it was increased to six Justices, modified the law as con-tained in this section, to conform with the new arrangement, but did not repeal the provision therein that a decision by the Supreme Court rendered by a full bench of three Justices can not be over-ruled unless expressly questioned and reviewed and the court in its decision distinctly states whether it adheres to, overrules, or modifies such decision. *Weaver* v. *Carter*, 101 *Ga.* 206, 207-8. See, in this connection, *Strickland* v. *State*, 115 *Ga.* 222, 226 (41 S. E. 713); *Calhoun* v. *Cawley*, 104 *Ga.* 335, 344 (30 S. E. 773); *Adkins* v. *State*, 103 *Ga.* 5 (1), 12 (30 S. E. 257).

We are, therefore, notwithstanding the later decisions of the Supreme Court, bound by *Drumright* v. *Philpot*, since it is the oldest decision and has not been expressly overruled. Interpreting that decision as we do, we hold upon its authority that, since the agent had valid authority to lease the premises for the landlord upon the terms contained in the written lease, it was a good con-tract for a year, as provided therein, although the agent, without authority, executed the lease under seal. We have come to this conclusion by following the rules laid down in the statutes and in the decisions of the Supreme Court governing the courts in arriv-ing at correct decisions. If we are wrong in our interpretation

of *Drumright* v. *Philpot,* and in our conclusion as to its force.as authority, the Supreme Court can correct us. We will not, however, rest our decision alone upon its authority.

3. If, however, the lease was invalid as between the landlord and the tenant, there was no renewal implied by law for another year. Was there then in fact a contract of renewal? The evidence warranted a finding that on April 11, 1919, after the alleged lease had already expired on the 31st day of March preceding, the tenant made to the agent of the landlord a payment to cover the rent for the month of April, in a sum equal to the monthly rental which was stipulated in the alleged lease, and that accompanying this payment, which was made by check through the mail to the agent, there was inclosed a letter from the tenant to the agent offering to "renew" the alleged lease for another year, the receipt of which letter was never acknowledged. Whether or not there had been a valid lease between the parties for the preceding year, there nevertheless could have been a contract subsequently entered into between the parties for another year upon the same terms contained in the invalid lease, whether or not the new contract was properly, or improperly, styled a renewal of the alleged lease. Was there such a contract? If on the 11th day of April, when the tenant sought to renew the alleged lease upon the assumption that it was a valid contract between the parties, there had been no valid lease between the parties for the preceding year, still the payment by the tenant to the landlord, through the latter's agent, of the rent for April (which, without an express agreement as to payment in advance, was not due until the end of the month of April) constituted, with the tenant's promise to become a tenant for a year from the 1st of April, a sufficient consideration to support a promise, whether express or implied, by the landlord to "renew" or rent the premises for another year. If the payment thus made by the tenant on the condition contained in the letter was accepted by the landlord through his agent, and the tenant was allowed to continue on the premises as tenant, there was created a new lease contract for a year beginning the 1st of April, 1919. The evidence, while conflicting as to the receipt of the letter by the agent, authorized the inference that he did receive it, since he admits receiving the check. The evidence authorized the inference that there was a tacit acceptance by the landlord of the

tenant's offer, thus establishing a lease contract for a year between the parties.

The judge of the municipal court of Atlanta, who, without a jury, tried the case in the first instance, was authorized to hold that the tenant was holding the premises as a tenant for a year and could not be properly dispossessed as a tenant at will. The judge of the superior court therefore erred in sustaining the certiorari and in entering a final judgment dispossessing the tenant.

*Judgment reversed. Jenkins, P. J., concurs. Smith, J., dissents.*

SMITH, J., dissenting. A writing purporting to be a lease for one year, signed by the agent of the owner, under seal, the agent having no authority under seal to execute a sealed instrument, and the owner never having, under seal, ratified the execution of such writing, was void as a lease; but the tenant's entry into possession under it and the landlord's reception of rent created a tenancy at will; and the receiving of monthly rental from the tenant by a purchaser from the owner did not change the relationship between the parties as landlord and tenant, and therefore the purchaser had a legal right to give the tenant the notice required by section 3709 of the Civil Code of 1910, and thus terminate the tenancy. See *Hayes* v. *City of Atlanta,* 1 *Ga. App.* 25 (2) (57 S. E. 1087), and cases there cited; *Lynch* v. *Poole,* 138 *Ga.* 303 (75 S. E. 158). I am therefore constrained to disagree with my colleagues in their ruling that the judge of the superior court erred in sustaining the certiorari and entering a final judgment in favor of the landlord.