No. 14.—NICHOLAS TOMPKINS, plaintiff in error, *vs.* WILLIAM PHILIPS, defendant in error.

[1.] Any benefit accruing to him who makes the promise, or any loss, trouble, or disadvantage undergone by, or charge imposed upon, him to whom it is made, is sufficient consideration, in the eye of the law, to sustain an assumpsit.

[2.] *Damage* or *trouble* to the promissee, as well as *benefit* to the promissor, is a sufficient consideration to support a promise.

[3.] Admissions which have been *acted on by others*, are conclusive against the party making them, in all cases, between him and the person whose conduct he has thus influenced. In such cases, the party is estopped, on grounds of public policy and good faith, from *repudiating* his own representations.

Rule against Sheriff, in Heard Superior Court. Decided by Judge HILL. April Term, 1852.

Wilson W. Brooks, as administrator of George M. Smith, brought an action of trover, for certain slaves, against Charles Foster and Nicholas Tompkins, as his security on the appeal, for the negroes in controversy and for $3500.00 hire. Foster was insolvent. William Philips held executions against Foster, amounting to some $900.00.

During the term of the Court at which verdict and judgment were rendered in the action of trover, Tompkins approached Philips, and informed him of the existence of certain negroes (Louisa and her three children) which he believed were subject to his, Philips', executions, and could be condemned as the property of Foster, and urged Philips to have the same levied on.

Philips replied that he knew the property and knew it was not subject, and he would not incur costs, and would not levy on it; that if he (Tompkins) was fool enough to risk his money in the attempt, he was welcome to do so, and could have all he could get. Tompkins then proposed, that if Philips would have the negroes levied on, he (Tompkins,) would pay all the cost; which Philips refused to do. Execution was issued in the trover case, and Tompkins caused it to be levied on the negroes, (Louisa and her three children.) A claim was interposed by one Philpot. In the meantime, Philips, in pursuance of his agreement, executed to Tompkins the following release:

" GEORGIA, HEARD COUNTY.
I, William Philips, of the County and State aforesaid, do hereby relinquish and release all my lien or legal claim, created in me by several or all the *fi. fas.* in my favor against Charles

Foster, on the negro woman Lue, or Luiza, and her three chil-
dren, now levied on by a *fi. fa.* of Wilson W. Brooks, adminis-
trator of George M. Smith's estate, *vs.* Charles Foster and Nich-
olas Tompkins.　　　　　　　　WILLIAM PHILIPS.

　　April 1st, 1851."

The negroes were condemned and found subject to the *fi. fa.*
and brought to sale.

Philips came into Court, and claimed the money upon his *fi.
fas.*

The Court decided that Philips was entitled to the money,
and ordered the same paid over to his *fi. fas.* on the ground
that his agreement with Tompkins was without consideration,
and this decision is assigned as error.

B. H. HILL and W. DOUGHERTY, for plaintiff in error.

JNO. L. STEPHENS, for defendant in error.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] The error assigned to the judgment of the Court below
in this case is, the ordering of the money raised by the sale of
Louisa and her three children, to be paid over to Philips' *fi. fas.*

The plaintiff in error claims the money under the agreement
made between himself and Philips. The Court held that there
was no *legal consideration* for that agreement, and for that reason
ordered the money to be paid to Philips' executions.

Philips' executions against Foster, the defendant, were of older
date than the one controlled by Tompkins against Foster, and
on that account were entitled to *priority* of payment out of any
money which might be raised by levy and sale of the defend-
ant's property.

Tompkins insisted that Philips should levy his executions on
Louisa and her three children, assuring him they were subject
to the payment of Foster's debts, and offered to indemnify him
for costs, &c. Philips declined doing so, saying that he knew
that the negroes were not subject to the payment of Foster's debts,

but that if he, Tompkins, was fool enough to risk his money and trouble for them, he was welcome to all he could make; that he, Philips would have nothing to do with it; that he would not incur a bill of costs, &c.

The *fi. fa.* controlled by Tompkins, was one which had been obtained against Foster and himself, as Foster's security on appeal in favor of Brooks, administrator of Smith. Subsequent to the verbal agreement between Philips and Tompkins, Philips executed a written release and relinquishment of all *lien* or *legal claim*, created by his *fi. fas.* on the negro slave Louisa and her three children then levied on by a *fi. fa.* of Wilson Brooks, administrator of George M. Smith, *vs.* Charles Foster and Nicholas Tompkins. This relinquishment was drawn up at the request of both Tompkins and Philips, and signed by the latter, who remarked at the same time, that he knew Tompkins could not condemn the negroes, but if he could condemn them, he was welcome to do so, and that he would not claim any of the money, it would levy his executions on a negro by the name of Jordan if he got the opportunity. Was there a sufficient legal *consideration* for this agreement between Tompkins and Philips? "Any *benefit* accruing to him who makes the promise, or any *loss, trouble,* or *disadvantage* undergone by, or *charge* imposed upon him to whom it is made, is sufficient consideration, in the eye of the law, to sustain an assumpsit." *Smith on Contracts,* 87. The consideration upon which an assumpsit shall be founded, must be for the *benefit* of the defendant, or to the *trouble* or *prejudice* of the plaintiff. 1 *Comings Dig.* 297, *letter B—Consideration.*

[2.] *Damage* to the *promissee,* as well as *benefit* to the *promissor,* is a sufficient consideration to support a promise. *Forster vs. Fuller,* 6 *Mass. Rep.* 59. *Townsby vs. Sumral,* 2 *Peters' Rep.* 170. The consideration upon which an assumpsit is founded must be either for the *benefit* of the defendant, or to the *trouble* or *prejudice* of the plaintiff. *Powell vs. Brown,* 3 *John. Rep.* 104. These principles were recognized by this Court in *Austell vs. Rice,* 5 *Geo. Rep.* 476. The levying upon the property with his execution by Tompkins; the prosecuting the claim

for the negroes, which the record shews was interposed by Phil-pot, and the employment of counsel, necessarily subjected him to *trouble, loss, disadvantage,* and *charges,* which, as we have seen, constitutes a good legal consideration for the promise made by Philips, that if Tompkins would condemn the negroes, that he would not claim the money arising from the sale thereof. The original parol promise, was consideration for the written relinquishment.   There is another legal principle which prohibits Philips from claiming this money, according to the facts apparent on the face of this record.

[3.] By his admissions and representations to Tompkins, he induced him to levy upon, condemn and bring this property to sale.   Admissions (says Professor *Greenleaf,*) which have been *acted on by others,* are conclusive against the party making them, in all cases, between *him* and the person whose *conduct he has* thus *influenced.*   In such cases, the party is estopped, on grounds of public policy and good faith, from *repudiating* his own repre-sentations.   1 *Greenleaf's Ev. sec.* 207.   Now here was not only an admission, but an *express declaration* by Philips to Tomp-kins, that Louisa and her children were not subject to the pay-ment of Foster's debts, and that if Tompkins was willing to risk his money, and condemn them, he *would not claim the money arising from the sale thereof,* by virtue of his *prior lien* on Foster's property.

Tompkins, acting upon this admission and declaration of Philips, did not only *risk his money,* but his *time* and *trouble,* for the *condemnation of the property ;* and when it was condemned and brought to sale, Philips, *repudiating* his admissions and de-clarations, comes forward and claims the money—which fair dealing and *good faith,* in our judgment, forbid him from doing. Let the judgment of the Court below be reversed.