## MERCHANTS & FARMERS BANK *v.* JOHNSTON.

1. An act done by an agent at the instance of and in the presence of his principal is in law the act of the principal; and if, at the instance and in the presence of a member of a partnership, the name of the partnership is signed by another person to a promissory note under seal, the note thus executed has the same legal effect as if such member had performed the physical act of signing.
2. Under the Civil Code, §§2643, 2651, one member of a commercial partnership can bind it by signing its name to a promissory note under seal, in the course of the business of the partnership.

Argued February 7,—Decided May 15, 1908.

Complaint. Before Judge Lewis. Baldwin superior court. January 15, 1907.

The suit was against Samuel Evans & Company (alleged to be a partnership composed of Sámuel Evans and Kate M. Johnston), on two promissory notes under seal, payable to the plaintiff,—one dated September 28, 1900, and the other dated January 8, 1901,—and upon an account. The notes were signed "Samuel Evans & Company, per M. Johnston." The defendant Kate M. Johnston filed a plea denying that she was ever a member of the partnership, or that she was indebted to the plaintiff, and denying that she ever executed, or authorized any one else to execute for her, the notes sued on, or ever ratified their execution. The evidence of the plaintiff material to be considered was as follows: The business of the firm of Samuel Evans & Company was trading in stock, and the firm ran an account with the plaintiff. The notes sued upon were given to the plaintiff to cover an overdraft of this account. Samuel Evans authorized the cashier of the plaintiff to open the account. M. Johnston, the husband of Kate M. Johnston, had the management of the trading. Upon the hearing of a claim case, which the witnesses thought was in 1899, Kate M. Johnston testified, that a horse, title to which was involved in the claim case, was the property of Samuel Evans & Company, and that she was the company in this firm, which was a copartnership composed of Samuel Evans and herself, and that M. Johnston worked for the firm. A part of the testimony of the cashier of the plaintiff was as follows: "Mr. Samuel Evans, after the signing of the notes sued on, by Dr. Johnston as agent, ratified everything that was done in regard to the business of Samuel Evans & Company. He approved the signing of the notes sued on, which are signed 'Samuel Evans & Company, per Mark Johnston.' A heap of times they would be signed in his presence. Samuel Evans approved all of these transactions, including the notes. He always approved all of them when I was cashier. I never would take one of these notes without his approval. They would come in the bank and fix them up and cover the overdrafts, both being present. I would get after them about the overdrafts, and they would come in and make notes to cover the overdrafts, and I would never take the notes without Samuel Evans' approval. I do not swear positively what Mr. Evans said about these two particular notes, but these notes were taken by Mr. Evans' approval. I don't know that I could state what Mr. Evans said about them. He didn't say any-

thing about their being under seal." John T. Allen, president of the plaintiff, also testified: "I wish to say that Mr. Evans said to me repeatedly that he approved this transaction, and that he authorized Mark Johnston to sign 'Samuel Evans & Company' to these particular notes, and approved the transaction." Checks on and receipts to the plaintiff, signed "M. Johnston, agent," and checks, dated in 1899, signed "Samuel Evans & Company, per Mrs. M. Johnston," were introduced in evidence. When the notes sued upon were tendered in evidence by the plaintiff, the court ruled that they were not admissible against Kate M. Johnston, for the reason that it appeared that they were executed under seal by an agent, and there was no proof of ratification under seal of the execution of such instruments; and, upon motion of defendants' counsel, the court granted a nonsuit so far as the defendant Kate M. Johnston was concerned, counsel for the plaintiff conceding that there could be no recovery upon the account sued upon. To these rulings the plaintiff excepted.

*Allen & Pottle,* for plaintiff. *Hines & Vinson, W. B. Wingfield.* and *J. S. Turner,* for defendant.

HOLDEN, J. (After stating the facts.)

1. An agent acting in behalf of a principal, in the latter's presence and at his instance, is for the time being the alter ego of the principal, and the agent's act is in law the act of the principal himself. So, if one person, at the request and in the presence of another, execute an instrument in behalf of the latter, the legal effect is the same as though the party authorizing the execution himself held the pen. *Ellis* v. *Francis,* 9 *Ga.* 435; *Reinhart* v. *Miller,* 22 *Ga.* 402 (68 Am. D. 506). See also *Cunningham* v. *Lamar,* 51 *Ga.* 574. This rule is not altered by the fact that the instrument executed is one under seal. 2 Bishop on Contracts, §1047. Applying the above rule to the case under consideration, if M. Johnston, at the instance and in the presence of Samuel Evans, signed to the notes sued upon the name of the firm of which Samuel Evans was a member, these notes have the same legal effect, as obligations of the partnership, as though Samuel Evans himself had affixed the partnership name thereto. Who composed the firm of Samuel Evans & Company, and whether the signature of the partnership name to the notes was made under such circumstances as to make it in law the act of Samuel Evans, are, un-

der the evidence in the case, questions of fact for determination by a jury.

2. The court excluded the notes from evidence, when offered by the plaintiff, because they were under seal. There was no evidence that Kate M. Johnston ratified the signing of the notes, or authorized the signing of them, unless the authority came from her relation to the partnership. The main question involved in this case is whether or not one partner can bind the partnership by executing a note under seal in the name of the partnership, without any authority from the other partners except such as comes from the relation of partners. Under our statutes, a member of any partnership can bind it by giving a negotiable promissory note. *Selman* v. *Brown,* 78 *Ga.* 332. It has been held that one partner can not bind the partnership, in the execution of a deed to land in the name of the firm. *Drumright* v. *Philpot,* 16 *Ga.* 424 (60 Am. D. 738). A partner derives his power to bind the partnership by reason of being a general agent of the firm. While generally an agent can not bind his principal by an instrument in writing under seal, without authority or ratification from the principal under seal, and while it has been held that one partner can not bind his copartner in the execution of a deed to realty by virtue of the authority he derives from the relation of copartnership, it was held in the case of *Drumright* v. *Philpot,* supra, that "a prior authority, or a subsequent ratification, not under seal, either express or implied, verbal or written, is sufficient to establish the deed as the deed of the firm, and binding upon it as such." It has been held by our court that one partner can not bind the firm in the execution of a mortgage on real estate in the name of the partnership (*Sullive* v. *Jones,* 61 *Ga.* 676; *Turner* v. *Printup,* 65 *Ga.* 71); but it has been held that one partner can bind the firm to a mortgage on personalty. *Phillips* v. *Trowbridge Furniture Co.,* 86 *Ga.* 699 (13 S. E. 19). While it is true that our court has held that one partner can not execute a deed binding the firm, it does not necessarily follow from this that under our statute one partner can not bind the firm in the execution of a negotiable promissory note under seal. In the case of *Straffin* v. *Newell, T. U. P. Charl.* 163 (4 Am. D. 705) it was held: "A charter-party being exclusively a mercantile transaction and always in the course of trade, one partner can therefore bind the

other by signature and seal in this species of mercantile contracts."
In delivering the opinion (p. 165) Judge Charlton said: "I bot-
tom my decision upon the broad ground that a charter-party is
exclusively a mercantile transaction, and always in the course of
trade. . . I mean a deed so inseparably incidental, so closely
blended with partnerships and mercantile pursuits, as the con-
tract of charter-party is." While this authority is not binding,
we think the decision is correct.

There are many decisions, based upon the common law and upon
statutory enactments, to the effect that one copartner can not bind
his copartner by an instrument under seal; but the question before
us is whether or not one partner can bind the firm, in the execu-
tion of a negotiable promissory note under seal, under the law as
it exists in this State. The Civil Code, §2651, provides: "All
the partners are bound by the acts of any one, within the legiti-
mate business of the partnership, until dissolution or the com-
mencement of legal process for that purpose, or express notice of
dissent to the person about to be contracted with." And section
2643 provides: "Every partner has a right . . to contract or
otherwise bind the firm in matters connected with its business, and
to execute any writing or bond in the course of the business." The
word "bond" was probably put into this statute because of the
special enactment of 1838 (Acts 1838, p. 165), providing that
partners could bind the firm by signing the firm name to a bond
in any judicial proceeding in which the firm was interested. What-
ever may be the reason for the word "bond" appearing in this
section, the meaning of the statute is that one partner can bind
the firm when he executes in the name of the firm "any writing
or bond in the course of the business," whether under seal or not.
No restriction is made as to sealed instruments. In the making
of promissory notes printed forms are commonly used, a very large
percentage of which are prepared with a view to their execution
under seal, the recital that they are given under seal and the
device to be used as a seal appearing on the printed form. It is
a matter of common practice for such notes to be executed by one
partner on behalf of the firm, often with no attention paid to the
fact that the notes thus given are under seal, and without any
question arising as to the power of the partner to bind the firm in
so executing them. Such notes are doubtless regarded by the par-

ties as binding obligations on the firm in whose behalf they are executed, and we think they are to be so regarded under the law, in view of the broad power given to a partner in the sections of the code above referred to. In the case of Hull *v.* Young, decided by the Supreme Court of South Carolina, and reported in 30 S. C. 121 (8 S. E. 695, 3 L. R. A. 521), it was held by a majority of the court that a partner has no authority to execute a sealed note which will bind his firm, although, by the statutes of the State where the note is executed, it is a negotiable note. The note referred to in that case was executed in Georgia, and the decision was made under a construction of the law of this State. In a dissenting opinion, rendered by Justice McIver, he says: "The note in this case was made in Georgia, was payable there, and therefore 'its nature, validity. interpretation, and effect' must be determined by the law of that State. Consequently, under that law, it must be regarded as a negotiable paper, just like a bill of exchange or promissory note, notwithstanding the seal attached to it. So regarded, it seems to me that it is such a paper as may be executed by one partner in the name of, and binding upon the firm, when given for the purposes of the partnership, as this note unquestionably was; for partnership dealings are usually carried on with just such paper." It does not appear that in deciding this case the South Carolina court considered the provisions of our law now contained in section 2643 of the Civil Code, cited above, in view of which we think the dissenting opinion of Justice McIver states the law of this State. On account of the ruling above made, it necessarily follows that the court below committed error in refusing to admit in evidence the notes offered by the plaintiff, and in awarding a nonsuit as to Kate M. Johnston; and the judgment is

*Reversed. All the Justices concur.*