1779. BISHOP *et al. v.* PEOPLE'S BANK OF CALHOUN.

1. One partner in an ordinary commercial partnership has authority to execute a promissory note under seal, binding his copartners.
2. If a person lending money to a partner for the firm has knowledge or reasonable ground to suspect that it is intended to be applied to other purposes than the business of the firm, he can not recover the money from the partnership.
(a) The mere fact that a partner negotiating a loan on behalf of his partnership had previously applied to the same person for a loan, on behalf of a corporation in which he was interested, is not sufficient to cause the lender to suspect that the money borrowed for the partnership would be used in the business of the corporation.

Complaint; from city court of Dalton—Judge Glenn. February 12, 1909.

Argued May 7, 1909.—Decided February 22, 1910.

*F. K. McCutchen, Maddox & Shumate,* for plaintiffs in error.

*C. D. McCutchen, W. E. Mann,* contra.

RUSSELL, J. The People's Bank of Calhoun instituted suit against the Pendley Lumber Company, a partnership composed of William Pendley, Willis Pendley, and L. L. Bishop, on a promissory note made to the bank. The note was signed as follows: "Pendley Lumber Company, by William Pendley (Seal)." Bishop filed a defense, admitting that he was a member of the partnership, that the note was executed by the partnership, and alleging that the note was not binding on him, for the reason that the money which was the consideration for the note was loaned to Pendley by the bank with knowledge, or with reasonable ground to suspect, that it would be applied to other purposes than the business of the firm; also that Pendley had no authority to execute a note under seal. The judge directed a verdict in favor of the bank, and Bishop excepts.

1. It is contended by Bishop that the note was not binding on him, for the reason that it was under seal, and one partner has no authority to execute a note under seal so as to bind the other partners, without authority under seal. This contention has been disposed of adversely to the plaintiff in error by the Supreme Court in the case of *Merchants & Farmers Bank* v. *Johnson,* 130 *Ga.* 661 (61 S. E. 543, 17 L. R. A. (N. S.) 969).

2. One question in the case is whether or not the bank had knowledge or reasonable ground to suspect that Pendley would ap-

ply the money borrowed as the consideration for the note to a non-partnership purpose. "A person lending money to a partner for the firm is not bound to see to its application, but if he knows or has reasonable ground to suspect that it is intended to be applied to other purposes than the business of the firm, he can not recover it from the partnership." Civil Code, §2654. It is contended that the president of the bank, through whom the money was loaned, had "reasonable ground to suspect" that Pendley intended to apply the money toward the payment of a debt of the Pendley Brick Company, a corporation entirely distinct from the Pendley Lumber Company, in whose name the money was borrowed. The president of the bank, and Pendley, who acted for the partnership in negotiating the loan, expressly denied that there was anything said by either party as to the purpose to which the money would be applied, other than that the money was being borrowed to pay a debt owing to one Hardwick. Bishop was not present when the loan was made, and had nothing whatever to do with the transaction; in fact he did not, until some time afterwards, know the loan had been negotiated. The only evidence in the record tending to show that the bank had notice of the purpose to which the money would be applied is an admission of Slagel, the president of the bank. Bishop testified that he had a conversation with Slagel some time after the loan was made, at which time Slagel admitted that he knew the money would be used by Pendley for the payment of a debt of the Pendley Brick Company. The portion of Bishop's testimony as to this alleged admission is as follows: "Mr. Slagel told me what passed between him and Mr. Pendley when Pendley came wanting to borrow the money. He said that Pendley wanted to borrow the money, and he told Pendley, 'If you want it for the brick company, I can't let you have it, it is an incorporated concern, and the bank did not lend to an incorporated concern, did not feel safe.' He said then he wanted it for the Pendley Lumber Company, and he asked him what the Pendley Lumber Company was, and he told him it was his son and him and Bishop, and he said, 'That will make it good, and I will let the Pendley Lumber Company have it;' and he thought it would be good because I was one of the Pendley Lumber Company." It is contended that since Pendley applied for a loan

28

for the brick company which was refused, and then applied for a loan for the lumber company, the bank ought to have suspected that the money which was being borrowed would be applied to the same purpose for which the loan was asked originally. We do not agree with this contention. It is true that ordinarily it is a jury question as to what circumstance is sufficient to put the lender of money on notice that the borrowing partner intends to apply it to a nonpartnership purpose, but where, from all the evidence, there is no room for honest or reasonable difference of opinion, or where reasonable men could not fairly draw but one inference, the court may properly direct a verdict. In order to charge the lender with notice that the borrowing partner intends to make a misappropriation of the funds borrowed, it must appear that there was some additional circumstance surrounding the transaction other than that relied on in the case at bar. Furthermore, the defendant did not successfully defend against the note, because the burden was upon him to show that the proceeds of the note were not applied to the payment of partnership indebtedness for which he was bound.                                        *Judgment affirmed.*