30702. GILMORE, administrator, *v.* HAMMOCK.

DECIDED JANUARY 18, 1945.

*E. T. Averett, E. W. Jordan,* for plaintiff in error.
*J. J. Harris, W. C. McMillan,* contra.

SUTTON, P. J.   Cecil Hammock filed his petition in the superior court of Washington County against Thomas W. Gilmore as administrator of A. C. Gilmore, alleging a breach of a contract between him and A. C. Gilmore, deceased, and sued to recover damages in the sum of $10,500, with an alternative prayer for specific performance of the alleged contract.   Demurrers, general and special, were filed to the petition by the administrator.   The prayer for specific performance was stricken by the plaintiff.   After the petition was amended to meet the special demurrers, the court overruled the general demurrer, and the defendant excepted.

Briefly, the petition as amended alleged that in 1940 the petitioner was an employee of Gilmore Brothers Cotton Warehouse, and that, as manager, he was in immediate charge and control of the office and warehouse business, keeping its books and doing other work connected therewith; that during said time A. C. Gilmore was the owner of the Texas Company bulk station and was the agent of the Texas Company in Sandersville, Georgia, and that the petitioner was assisting with the operation of the Texas Company bulk station and gave it such portion of his time as was necessary and required in the operation of said station, and as his work at said warehouse permitted; that A. C. Gilmore used the office of said Gilmore Brothers Cotton Warehouse (the same office occupied by the petitioner) for conducting and carrying on his personal and individual affairs, and, incidentally but not as a part of the services which the petitioner was employed to render, he aided and assisted the said Gilmore in his personal and individual business affairs; that during the year 1940, and until his death in November, 1942, the said A. C. Gilmore suffered serious physical disabilities and by reason thereof was considerably restricted in his business and private activities; that by reason of his said condition and by reason of their association in the office of said Gilmore Brothers Cotton Warehouse the petitioner had occasion to render to the said Gilmore many personal services independent of and outside of his employment; that about August 15, 1940, he had two offers of employment in positions that would have taken him out of the City of Sandersville and would have made it necessary, if accepted, that he terminate his connection with Gilmore Brothers Cotton Warehouse; that the offers of employment were such as would have been considerably more remunerative than

his employment with Gilmore Brothers Cotton Warehouse; that the said A. C. Gilmore was aware of the fact of such offers and that the petitioner had the same under consideration; that the said A. C. Gilmore was very desirous that the petitioner should continue in his employment as above set forth and that he should not sever such connection. (By amendment the names of the parties offering to employ him and the amounts to be paid him by such prospective employers were set out.) The petition alleged that the said A. C. Gilmore desiring the petitioner to continue in the work in which he was then engaged, and desiring that he should not accept other employment, insisted that he continue in the work of his then employment with Gilmore Brothers Cotton Warehouse; that as an inducement to so continue the said Gilmore proposed to him, if he would not accept either of said offers but would remain in Sandersville and continue in his then employment so long as he, the said A. C. Gilmore, should live, that he would by will compensate him by giving to him all of the physical properties and equipment used by the Texas bulk station in carrying on the business of the Texas agency; consequently, after considering the two offers of employment, he declined to accept either of them, and then it was contracted and agreed by and between the petitioner and the said Gilmore that if he would continue in his then employment and would so continue as long as he, the said Gilmore, lived, the said Gilmore would give to him by will the physical properties and equipment of the Texas bulk station. (This paragraph of the petition was amended by setting out the list of the properties of said Texas bulk station and the values thereof.) It was alleged that the petitioner complied with said contract and continued in said employment, rendering such services as had been previously rendered until November, 1942, at which time the said Gilmore died suddenly and unexpectedly and without having executed a final will and testament, and without complying with his part of the contract and agreement entered into, by making a will and leaving to the petitioner the physical properties and equipment of said bulk station, the alleged value of which was $10,500, and the petitioner sought a recovery of said amount as damages for the breach of the alleged contract.

It is contended by the plaintiff in error that the petition fails to set forth a cause of action; that no valid and enforceable con-

tract is shown, there being no valid consideration for the promise alleged and relied on by the plaintiff as a contract binding the intestate.

The Code, § 20-302, provides, "A consideration is valid if any benefit accrues to him who makes the promise, or any injury to him who receives the promise." In the case of *Sanders* v. *Carter*, 91 *Ga.* 450, 460 (17 S. E. 345), the Supreme Court in construing this statute, said: "It will be observed that the language employed negatives the idea that both benefit and injury must concur, but expressly provides that either, by itself, will support the promise; and this court has uniformly followed the plain mandate of this section, and held that, in the absence of fraud, even a slight benefit will be sufficient." In *Whitley* v. *Powell*, 47 *Ga. App.* 105 (169 S. E. 766), this court ruled: "Any benefit accruing to him who makes the promise, or any loss, trouble, or disadvantage undergone by him to whom it is made, is a sufficient consideration in the eyes of the law, to sustain an assumpsit," citing *Tomkins* v. *Philips*, 12 *Ga.* 52, Civil Code (1910), § 4242. "It is a well-settled rule that one contract may be the consideration of another, the inducement to the execution thereof." *Indiana Truck Corporation* v. *Glock*, 46 *Ga. App.* 519 (168 S. E. 124). According to the allegations of the petition a benefit accrued not only to the partnership and to A. C. Gilmore individually, but also an injury arose to the plaintiff.

In *Banks* v. *Howard*, 117 *Ga.* 94 (1, 2), 96 (43 S. E. 438), it was held: "A contract by which one of the contracting parties agrees with the other that he will make a will containing a legacy fully compensating the latter for services rendered and to be rendered to the former during his lifetime is valid and enforceable. Upon the failure of one of the contracting parties in such a case to make the will containing an item providing compensation, a cause of action arises at his death, in favor of the surviving party, for damages." And in the opinion, it was said: "Contracts under which one of the contracting parties agrees with the other, for a valuable consideration, that he will make a will giving to the other property, either real or personal, have been sustained and enforced in America from the earliest times, and the validity of such contract seems to be beyond all doubt . . Where a party in whose favor the will is to be made has performed his

part of the contract and the other party dies without making the will, . . and the contract was one dealing with property, equity would award damages as for a breach of the contract; or the disappointed party may sue at law for damages for a breach of the contract to make a will in accordance with the agreement." In such a case, "the measure of damages is the value of the property promised to be devised." *Gordon* v. *Spellman,* 145 *Ga.* 682 (89 S. E. 749, Ann. Cas. 1918A, 852).

Counsel for the plaintiff in error cite and rely on *Bunting* v. *Dobson,* 125 *Ga.* 447 (54 S. E. 102). In that case the consideration for the services to be performed in taking care of the invalid mother of the intestate was that the "petitioner would share a child's interest in whatever was accumulated by the three," and the Supreme Court held, "That this agreement was unenforceable as to any property belonging to or acquired by the mother, inasmuch as she was in no wise a party to the contract." However, it was said in that case: "It certainly is not alleged that Dobson agreed, in consideration of services to be rendered by the plaintiff in taking care of his invalid mother, to provide by will for the payment of compensation to the plaintiff by bestowing upon her any fixed and definite interest in this estate. Had such a precise and definite contract been alleged, doubtless a cause of action would have been set forth . . Not only was this contract unenforceable as respects the interest of the mother in the joint accumulations of the family, for the reason that she never assented thereto, but it was also indefinite as to the manner of its performance by the defendant's intestate." In the present case the property to be given Hammock was owned individually by Gilmore and it can not be successfully maintained, as contended by the plaintiff in error, that the contract was legally impossible of performance in this respect. It was his property and he could dispose of it as he saw fit.

It is contended by the plaintiff in error that the petition does not allege that A. C. Gilmore was authorized to make the alleged contract, whereby Cecil Hammock was to continue in the employment of Gilmore Brothers Cotton Warehouse, and that the contract was legally and physically impossible of performance. It appears from the allegations of the petition that A. C. Gilmore was a member of the partnership of Gilmore Brothers Cotton

Warehouse and that he was the manager and actively in charge of the business of this firm. Hammock was a valued employee of the firm, his duties as such being important and essential. He had offers of employment by two other concerns, either of which would pay him more than he was receiving from Gilmore Brothers Cotton Warehouse and this was known by A. C. Gilmore, and that Hammock had these offers under consideration. A. C. Gilmore was very desirous that Hammock remain in the employment of the partnership and continue his work as then engaged, and as an inducement for him to do so and not to accept the more remunerative offers, he proposed to Hammock that if he would not accept either of said offers, but would continue in his then employment so long as A. C. Gilmore lived, that he would by will compensate him by giving him the physical properties and equipment of the Texas bulk station. And it appears from the petition that in return for the promise of A. C. Gilmore, Hammock declined to accept the more remunerative offers of employment, and agreed and contracted that he would continue in his then employment with Gilmore Brothers Cotton Warehouse as requested and proposed to him by the said A. C. Gilmore.

The Code, § 75-302, provides: "All the partners shall be bound by the acts of any one, within the legitimate scope of the business of the partnership, until dissolution or the commencement of legal proceedings for that purpose, or express notice of dissent to the person about to be contracted with." "A partner derives his power to bind the partnership by reason of being a general agent of the firm." *Merchants & Farmers Bank* v. *Johnston,* 130 *Ga.* 661, 664 (61 S. E. 543, 17 L. R. A. (N. S.) 969, 14 Ann. Cas. 546). The Code, § 75-202, provides that each partner has a right to contract or otherwise bind the firm in matters connected with its business. "A partnership is in effect a contract of mutual agency, each partner acting as a principal in his own behalf and as agent for his copartner." Shuman-Heink *v.* Folsom, 328 Ill. 321 (159 N. E. 250, 58 A. L. R. 485) ; 40 Am. Jur. 127.

Under the law, A. C. Gilmore, as a member of the partnership and directly in charge and control of its affairs, had authority to make a contract with Cecil Hammock, whereby he was to continue in his then present employment with the warehouse company, and as additional compensation for his so doing to agree and

contract to give him the properties of the Texas bulk station, by willing him the same. The petition set out a cause of action, and the court did not err in overruling the defendant's general demurrer.

*Judgment affirmed. Felton and Parker, JJ., concur.*